THE STATE OF OHIO, APPELLEE, *v.* WHITEHEAD, APPELLANT.

(No. 191—Decided March 6, 1951.)

Mr. *Seabury H. Ford,* prosecuting attorney, for appellee.

Messrs. *Amer, Cunningham & Schnur,* for appellant.

PHILLIPS, P. J.   The grand jury of Portage county indicted defendant-appellant, called defendant in this opinion, for forgery and in a separate indictment for "unlawfully, by false pretense and with intent to defraud one G. C. D'Amico, obtain[ing] something of value from said G. C. D'Amico, by selling, bartering a check purporting to be from one Earl W. Dowling to C. H. Whitehead, said Whitehead knowing the signature of the maker thereof to be false, and obtaining from said G. C. D'Amico something of value, to wit: $100 in U. S. currency, contrary to Section 13104 of the General Code of Ohio."

The trial judge sustained defendant's motion to quash the indictment for forgery and dismissed that indictment on the ground that the venue for the forgery charge lay in Summit county, overruled his motion to quash the indictment for false pretense, ordered the prosecuting attorney to file a bill of particulars, and overruled defendant's demurrer to the indictment.

The jury found defendant guilty "of obtaining money under false pretense in the manner and form as he stands charged in the indictment."

The trial judge overruled defendant's motions in arrest of judgment and for dismissal and entered judgment of conviction upon the verdict of the jury.

Defendant appealed on questions of law from the judgment of the trial court, and by assignments of error contends that the trial judge "erred in overruling appellant's motion to quash the indictment," which it is argued "is insufficient and defective and our demurrer thereto should have been sustained."

It is urged further by such assignments of error that the trial judge erred to defendant's prejudice "in the admission of evidence," in his general charge to the jury, and "in giving further charge to the jury after the case has been submitted to them." Defendant contends further that "the state failed to offer a scintilla of evidence that the signature of the maker of the check had been obtained or secured by false pretense," and that "the verdict of the jury was not sustained by the evidence and is contrary to law."

Defendant testified that he requested complainant, G. C. D'Amico, a tavern operator, to advance him $10 or $20 on a check for $100, signed by Earl W. Dowling and drawn on the Firestone Park Trust & Savings Bank of Akron, Ohio, which bank on January 19, 1944, changed its name to the Firestone Bank, and which, on the same date, destroyed all stationery, deposit slips, checks and other printed matter bearing its name and remaining in its possession; that he accepted such check as a deposit on rental of a house for Dowling, which he did not rent finally; that he suggested to D'Amico that he verify the authenticity of the check and if satisfactory he could give him the balance of the amount later; that D'Amico stated he had sufficient money to cash the check, which he did; that upon being advised by D'Amico ten days later that the check had been returned marked "unable to locate

account," he told D'Amico that he would take it up "the first of the week"; that subsequently D'Amico refused to talk with him; and that he endeavored to get the check as he had promised he would and was told it was at the office of the justice of the peace, who advised him he did not have it.

Defendant testified further that Earl W. Dowling lived in Dormont, Pennsylvania, and was employed by the Aetna Foundry & Machine Company, in care of which he had addressed a letter to Dowling, which letter was returned marked "not sufficient address," and whom he had not seen after May 11, 1949; and that as the result of a transaction between him and Dowling he had accepted the check, purportedly signed by Dowling, in exchange for a check Dowling had previously given him drawn on the Union Trust Company of Pittsburgh, Pennsylvania, concerning which transaction he had written the letter to Dowling, referred to above.

D'Amico testified that defendant was one of his customers; that defendant asked for an advance of ten or twenty dollars on such check, and that he advised defendant that "if it is a good check" he would cash it, which he did upon defendant's statement that the check was good; and that defendant did not make the check good on the following Monday, as he had promised he would, and on the following Tuesday he consulted with and gave the check to the prosecuting attorney of Portage county.

An official of the Firestone Bank testified that neither that bank nor its predecessor, the Firestone Park Trust & Savings Bank, ever had an account with "Earl W. Dowling"; and that the check dated May 11, 1949, which forms the basis of the charge against defendant, was scrutinized more closely than most checks because it was drawn on a blank check of the

Firestone Park Trust & Savings Bank, which had been out of existence since January 14, 1944.

Neither the state nor defendant called "Earl W. Dowling" as a witness, and he did not appear or testify.

"Whoever, by false pretense and with intent to defraud, obtains anything of value or procures the signature of another as maker, indorser or guarantor to a bond, bill, receipt, promissory note, draft, check or other evidence of indebtedness or whoever sells, barters or disposes of a bond, bill, receipt, promissory note, draft or check or offers so to do, knowing the signature of the maker, indorser or guarantor thereof, to have been obtained by false pretense, if the value of the property or instrument so procured, sold, bartered or disposed of * * * is thirty-five dollars or more, shall be imprisoned in the penitentiary not less than one year nor more than three years, or, if less than that sum, shall be fined not less than ten dollars nor more than one hundred dollars or imprisoned not less than ten days nor more than sixty days, or both." Section 13104, General Code.

That section of the General Code defines three types of crimes, first, obtaining anything of value by false pretense, second, procuring by false pretense the signature of another as maker, endorser, or guarantor to a bill, bond, receipt, promissory note, draft, check, or other evidence of indebtedness, and, third, selling, bartering, and disposing of the foregoing paper writings knowing the signature of the maker, endorser or guarantor thereof to have been obtained by false pretenses.

Defendant contends that the indictment upon which he was convicted was faulty and deficient because while stating, "knowing the signature of the maker [Earl W. Dowling] to be false," it did not allege

that ''any of the signatures to the check had been obtained by false pretense''; and, accordingly, that the trial judge erred to defendant's prejudice in overruling his demurrer to the indictment.

The state claims that the indictment was drawn in accordance with and clearly followed the language of Section 13104, General Code, and ''comes under the law applicable to obtaining money by false pretense, as defined in'' that section of the Code.

By the words, ''unlawfully, by false pretense and with intent to defraud one G. C. D'Amico, obtain something of value from said G. C. D'Amico * * * to wit: $100 in U. S. currency,'' the indictment averred all the material facts which it was necessary to prove in order to procure defendant's conviction of obtaining something of value from D'Amico by false pretense, the first type of crime charged in Section 13104, General Code, and with such reasonable certainty as to advise defendant what he might be expected to meet at the trial.

We find no defect in the indictment warranting the trial judge sustaining defendant's motion to quash it or defendant's demurrer thereto, and, in our opinion, in overruling them, the trial judge did not commit error prejudicial to defendant.

Defendant contends that the trial judge erred to his prejudice in the general and additional charge to the jury.

After deliberating for some time the jury sent a note to the trial judge as the result of which, after the jury was returned to the court room, the following colloquy between the court and the foreman of the jury ensued:

Court: ''As I understand it, you have not yet agreed, and you have requested the court for further instructions, is that correct?''

The foreman: ''Yes, sir.''

Court: "The court has received from the jury the following: 'We feel the determining factor is the validity of the check.' 'Is it the duty of the jury to determine whether or not the check is a forgery.

'Signed E L Miller.' "

Court: "The answer to your question is, no. The jury does have the right to inspect the check and to consider anything concerning it about which there has been testimony in the case, and bearing upon the question of whether or not there was or was not fraud or whether there was present any of the elements that I explained to you in my general charge."

The foreman: "For the satisfaction of the jury, the question comes up as to the law governing the thing where criminal intent comes in or doesn't come in. In other words, I don't know whether I am talking out of turn, if I am, stop me. What we are trying to determine is whether if a man merely cashes a check given to him by somebody according to law there is no criminal intent, if he writes a check and endorses it, on a bank that has no account and forges the signature, that is criminal."

Court: "I think I can go this far in instructing you. I say to you that it is the law that even if he did not himself draw the check, but if he endorsed the check, and by his endorsement received money by reason of the check, and his endorsement was made with the intent and with the other elements that I have mentioned, it would be a violation of law, and it would be within the indictment charged in this case. Does that get it clear to you?"

The foreman: "Yes, I think so."

Court: "You may now retire.

"The defendant excepts to the additional instructions to the jury."

We have studied carefully the general charge of the

trial judge and the foregoing colloquy, and, as a result, conclude that the trial judge did not err to defendant's prejudice with respect to them.

Arguing that since there was not "a scintilla of evidence" introduced upon trial that the signature on the check, which furnished the basis of the indictment, was obtained under false pretense, defendant urges that the trial judge erred to his prejudice in receiving such check in evidence.

We cannot reach the conclusion at which we are asked to arrive that the trial judge erred to defendant's prejudice in that respect.

Finally, defendant contends that the verdict of the jury is not sustained by the evidence and is contrary to law.

Based upon a careful reading of the bill of exceptions, it is our opinion that the verdict of the jury is based upon sufficient evidence and is not contrary to law, and we believe that substantial justice has been done.

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

GRIFFITH, J., concurs.

HILDEBRANT, J., concurs in the judgment.

HILDEBRANT, J., of the First Appellate District, sitting by designation in the Seventh Appellate District.