CARMEN D. DEL TORO, as Administratrix of the Estate of EDUARDO DEL TORO, Deceased, Respondent, *v.* HENRY CARROLL, Respondent, and GILBERTO R. CINTRON, Appellant. (Action No. 1.)

GILBERTO CINTRON, Appellant, *v.* HENRY CARROLL, Respondent. (Action No. 2.)

First Department, December 16, 1969.

*Sheila L. Birnbaum* of counsel (*Emile Z. Berman* and *A. Harold Frost,* attorneys), for appellant in Action No. 2.

*Donald J. Sheehan* of counsel (*Gill & Sheehan,* attorneys), for appellant in Action No. 1.

*Wilbur S. Talisman* for Carmen D. Del Toro, respondent.

*Dolores Gerber* of counsel (*DeSantis, McGarry & Hargous,* attorneys), for Henry Carroll, respondent.

McNALLY, J.   The jury returned a verdict in Action No. 1 in favor of plaintiff Eduardo Del Toro against defendant Gilberto R. Cintron in the sum of $20,000.   In Action No. 2 the jury returned a verdict in favor of defendant Henry Carroll against plaintiff Cintron.

The consolidated actions arose out of an accident which occurred on June 10, 1967 at 1:20 A.M. on the Long Island Expressway in Nassau County.   The record indicates a sharp conflict in the testimony as to the manner of the happening of the accident.   It is claimed that Cintron was driving his automobile in an easterly direction in the right-hand lane of the Expressway.   There were two passengers in Cintron's vehicle, one Sanchez, seated in the front to the driver's right, and Del Toro, who was seated in the rear.

Defendant Carroll was also proceeding in an easterly direction in a Dodge station wagon with a U-Haul trailer attached to it. The trailer was four feet wide and seven feet in length and

was loaded with furniture.  Carroll was accompanied by his two daughters and two other children.  The accident happened in a darkened area.

Cintron claims he was traveling in the right-hand lane of the Expressway at about 45 miles an hour when a vehicle with a trailer suddenly passed him in the center lane at a high rate of speed.  The vehicle suddenly and without warning veered into the right-hand lane and cut him off.  It is claimed that the trailer which was attached to the vehicle struck Cintron's vehicle, causing his head to be struck and loss of consciousness.  As a result of the impact, Cintron's motor vehicle went out of control across the center divider of the highway into the westbound lane and then proceeded across the grass divider and through two fences until it was brought to a stop by Sanchez.  Appellant's testimony was corroborated by Sanchez, his passenger.

At the time of the trial Sanchez was a member of the U. S. Armed Forces in Vietnam and his previous testimony was read into evidence.  His testimony was to the effect that the Cintron vehicle was proceeding at all times in the extreme right lane of traffic and that a station wagon with a trailer attached to it proceeding at a high rate of speed in the center lane passed Cintron's car and suddenly cut him off.  The trailer struck the left front of Cintron's vehicle, control thereof was lost, and it crossed into the westbound lane of traffic.  It crossed the highway once again when Sanchez brought it to a stop.  Del Toro testified that just prior to the accident Cintron's car was on the right-hand side of the road and was going straight when the other car struck it.

Carroll on the other hand gave contrary testimony.  He claimed he was traveling in the center lane when a dark shape crossed his front.  He went to the left to avoid the vehicle and eventually stopped on the grass divider.  He denied any contact between his vehicle or the trailer he was hauling and the Cintron automobile.  He admitted he was proceeding at about 50 or 51 miles an hour.  There was a printed legend on the back of the trailer that the speed limit to be used when towing the trailer was 45 miles per hour.

Carroll testified he did not see any lights approaching from the rear as he was proceeding in the center lane.  His testimony was apparently in conflict with his own written report of the accident to the Motor Vehicle Bureau.  His report stated: " Then he [Cintron] crossed into the lane where he had sideswiped me."  In a written statement given on July 9, 1967, Carroll stated " The car that struck mine was the 1956 Chrysler of G. Cintron ".

Deborah Carroll, 16 at the time of the accident, a passenger in her father's vehicle, testified in corroboration of her father. This testimony in turn was contradicted by an independent witness, one John Goetz.

Cintron was injured as a result of the accident. He was unconscious at the scene of the accident and was removed to Central General Hospital where he remained until August 23, 1967. He was then transferred to St. Vincent's Hospital on August 23 and was discharged on October 28, 1967. He was readmitted to St. Vincent's Hospital on February 26, 1968 and discharged April 12, 1968. Inasmuch as the nature and extent of his injuries have no bearing on the question involved, suffice it to say that his injuries were grievous and manifold, including multiple fractures and spinal injuries.

With reference to prior hospitalizations, Cintron testified that in March, 1966 he was admitted to Fordham Hospital as a result of fainting in his bathroom after taking several sleeping pills. He also testified that he was admitted to Fordham Hospital and treated for pneumonia in March, 1967.

Counsel for defendant Carroll, over the objection of appellant's counsel, introduced records of appellant's two previous hospitalizations at Fordham Hospital. Portions of these prior hospital records referred to Cintron's alleged history of intoxication and alcoholism. Appellant's counsel objected to the introduction of these portions of the record on the ground that they were irrelevant to the issues in the case and hearsay. No objection was made to the admission of those portions of the records that referred to physical examinations and diagnosis. No evidence was offered to show who gave the history portion of the record to the person who recorded it. Cintron denied giving any of this information to the hospital on either occasion, and stated he does not know who gave the information. Appellant was unconscious at the time he was admitted to the hospital in 1966. The record shows that he was comatose at the time of his admission.

No evidence whatsoever was adduced to show that appellant was intoxicated at the time of the accident. There is no indication of intoxication either in the Central General Hospital record or St. Vincent's Hospital record or by the police officer who arrived at the accident scene. Defendant's counsel stated that the purpose of introducing the prior hospital records was to attack appellant's credibility and his capacity to drive and to provide an explanation for the accident.

In our opinion, the introduction of those portions of the hospital records showing prior incidents of intoxication was highly

prejudicial and calculated to establish in the minds of the jury that appellant was intoxicated at the time of the accident, even though there was no evidence of intoxication in the case. An excerpt from the Fordham Hospital records at the time of Cintron's admission for treatment of pneumonia in March, 1967 indicates the following: "3/10/67 * * * Summary of family habits and diseases. Admitted this fifty-two year old Puerto Rican for the second time because of malaise, anorexia, cough, chills and fever of about three weeks prior to admission. Had been on a drinking bout prior to the episode."

With reference to the hospital record in 1966 the following appears: "49 year old white male who was admitted because of loss of consciousness * * * claimed he took a few shots of whiskey prior to the incident * * * patient fell in bathroom at home and struck head. Physical finding upon examination * * * alcoholic odor to breath."

Cintron's attorney moved to strike those portions of the hospital records on the ground that the records referred to prior alcoholic history of appellant and, further, it was irrelevant and hearsay. It is respondent's position that the hospital records with respect to dizziness and blackouts were rightfully offered on the question of credibility. We think the denial of this motion was error and that appellant was denied a fair trial by the admission of what we consider prejudicial evidence. A reading of the record clearly indicates that the hospital records were offered and admitted primarily to show prior instances of intoxication so that the jury could infer that appellant was in fact intoxicated at the time of the accident.

In *McQuage* v. *City of New York* (285 App. Div. 249, 253–254) involving similar circumstances, we held: "In the setting here presented we believe that the receipt of the evidence was prejudicial and should have been excluded. The obvious purpose of the testimony was not to impeach the credibility of the plaintiff but to show that he had been intoxicated on other occasions and thus permit the jury to draw the inference he was intoxicated at the time of the happening of the accident. Proof of intoxication on occasions prior to the accident was not admissible to prove or suggest that plaintiff was intoxicated at the time of the accident. The authorities relied upon by the defendant relate to proof of intoxication at the time of the event. It has been said upon the general subject of testimonial impeachment that 'a general *habit of intemperance* tells us nothing of the witness' testimonial incapacity except as it indicates actual intoxication at the time of the event observed or the time of testifying; and

hence, since in its bearing upon moral character it does not involve the veracity-trait    *    *    *    it will usually not be admissible ' (3 Wigmore on Evidence [3d ed.] § 933, p. 481.) '' (Italics in report.) (See, also, *Kowalczyk* v. *Krum,* 19 A D 2d 803.)

We are also of the opinion that evidence of prior intoxication is irrelevant on the issue of damages without proof of appellant's inability to report for work or to discharge the duties of his employment because of intoxication or a physical condition deriving therefrom.

We find the hospital records irrelevant on the issues here involved. It would appear, however, the records of prior hospitalization include history not furnished by appellant, who was comatose on his 1966 admission. CPLR 4518 (formerly Civ. Prac. Act, § 374-a) does not make admissible voluntary hearsay statements by third persons not employed by the hospital or under any duty in relation to the hospital or its business. (*Cox* v. *State of New York,* 3 N Y 2d 693, 699; *Ward* v. *Thistleton,* 32 A D 2d 846; *Del Re* v. *City of New York,* 180 Misc. 525; *Johnson* v. *Lutz,* 253 N. Y. 124, 128; Richardson, Evidence [9th ed.], § 233, pp. 226–227.) Moreover, if the hospital history is to be used against appellant as an admission, it should affirmatively appear that he furnished it.

A business record, including a hospital record, is admissible when it is made for the purpose of assisting a business enterprise in carrying on its business. (*Williams* v. *Alexander,* 309 N. Y. 283.) In *Williams,* the court discussed in detail the admissibility of hospital records. A hospital's business is to diagnose and treat patients. In *Roberto* v. *Nielson* (262 App. Div. 1035, affd. 288 N. Y. 581) it was held improper to admit a portion of the hospital record reading '' but evidently after a day of beer and wine drinking, he was somehow involved in an automobile accident.''

An entry in a hospital record comes within the statutory business records rule, now CPLR 4518 (subd. [a]), only if it is relevant to diagnosis or treatment of the patient's ailment. If it is not so relevant, the entry cannot be said to have been made in the regular course of business of the hospital and for the purpose of assisting it in carrying on that business. (*Williams* v. *Alexander, supra; People* v. *Roth,* 11 N Y 2d 80. See, also, Richardson, Evidence [9th ed.], §§ 232, 233, and cases cited therein.)

That the prior hospital records were introduced for an improper purpose is brought out by the record. The court asked counsel, '' what is the purpose of using these records? '' Counsel

answered that the purpose was to attack appellant's credibility and to show the relationship between his capacity to work and capacity to drive a motor vehicle and what might be an explanation of the accident.

On appellant's motion to strike the portions of the offending exhibit, the learned trial court denied the motion, stating: " The hospital records may serve both to contradict what he has had to say, and to give some indication as to whether or not, given his physical condition, he should have been a driver on the road. And if he should, possibly gives a possible basis for explanation of his actions. Whether the jury will or will not so conclude is up to them. The fact that these are contained in the history portion of the hospital records do not render them inadmissible, since they were elicited as part of the attempt to ascertain the appropriate treatment for Mr. Cintron.''

We hold that the introduction over proper objection of the history of appellant's alcoholism on prior hospitalizations was highly prejudicial, since they were irrelevant, hearsay and conclusory.

The judgment should be reversed, on the law, and a new trial ordered, with costs to abide the event.

STEUER, J. (dissenting). Although the question involved in this appeal is one of the admissibility of evidence, some mention of the substantive facts is necessary. This is a consolidated action arising out of a collision between two automobiles. Each driver sued the other, and a passenger sued both. Under the circumstances it makes for easier understanding to refer to the drivers by name. Both drivers were proceeding in an easterly direction on the Long Island Expressway. Cintron claims that Carroll suddenly passed him at a high rate of speed. Carroll's car was hauling a trailer. Cintron claims that Carroll having passed him turned into his lane and the trailer, in this operation, struck his car, causing Cintron to hit his head against his own car whereby he lost consciousness and consequently control of his car. Carroll contends that Cintron cut across his lane and that by driving onto the grass shoulder he was able to avoid any contact with the Cintron car, which he agrees was out of control. He further contends that Cintron lost control due to an attack of unconsciousness from causes other than the alleged collision. The jury accepted Carroll's version and rejected Cintron's.

On this appeal Cintron claims that the verdict was influenced by the reception of two hospital records which he claims were

improperly received. These records deal with Cintron's hospitalization on two prior occasions. They were offered to show that Cintron was subject to loss of consciousness. The record, compiled by the appendix method, is not clear as to what took place on the original offer. However, there apparently was no objection on the ground that the hospitalizations themselves were irrelevant facts, as where evidence of prior accidents would be inadmissible. Nor was any such contention advanced. Instead, objection took the form of applications to strike specific entries. This practice was perfectly proper, though the court was equally correct in denying the motions.

Some confusion has arisen in connection with the admissibility of certain portions of hospital records. Entries in hospital records are admissible with no foundation other than identification where they are made in the regular course of the business of the hospital. That business is the treatment of the patient. This includes the diagnosis upon which the treatment was based and such facts, and even assumptions (*Tyson* v. *Bittner,* 3 A D 2d 861), as to the patient's condition and physical history as gave rise to the diagnosis (*Roberto* v. *Nielson,* 262 App. Div. 1035, affd. 288 N. Y. 581). Entries which do not bear upon diagnosis are not admissible (*Williams* v. *Alexander,* 309 N. Y. 283.*).

Applying these principles to the portions of the hospital records allowed, it is seen that on both occasions Cintron was brought to the hospital in either a comatose or unconscious condition. Nothing could be more important to a determination of the indicated treatment than a diagnosis of the cause of the condition. There can be little doubt that plaintiff's history of alcoholism, with its attendant symptom of loss of consciousness, was a tool of diagnosis.

In our opinion the trial court exhibited complete understanding of the principles and ruled accordingly.

The judgment should be affirmed.

EAGER, J. P., and TILZER, J., concur with McNALLY, J.; STEUER, J., dissents in opinion in which MARKEWICH, J., concurs.

Judgment reversed, on the law, and a new trial ordered, with costs to abide the event.

---

* The case below (285 App. Div. 819), in the dissenting opinion of BELDOCK, J. which conforms to the Court of Appeals decision, gives a perfect example of the distinction. While the fact that the injured person was in an auto accident is helpful to diagnosis and is admissible, the details of how the accident happened can give no assistance to the doctor and should be excluded.