Gabriel **FELICE**, Plaintiff-Appellee,

v.

The **LONG ISLAND RAILROAD COM-PANY**, Defendant-Appellant.

No. 391, Docket 33714.

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1970.

Decided Feb. 25, 1970.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and MANSFIELD, District Judge.*

Howard G. Kristol, New York City (George M. Onken, Jamaica, N. Y. and James C. Hansen, New York City, of counsel), for defendant-appellant.

Peter M. J. Reilly, New York City (Edward G. Dougherty, and Roland J. Tellier, New York City, of counsel), for plaintiff-appellee.

FRIENDLY, Circuit Judge:

In this action in the District Court for the Southern District of New York, Gabriel Felice sought to recover under the FELA for a back injury experienced while working at a shop of the Long Island R.R. After trial before Judge Metzner and a jury, he received a judgment for $100,460. Not disputing that there was sufficient evidence for the verdict, the Long Island complains of prejudicial errors at the trial.

On March 8, 1966, Felice, a car repairman, was working with two others, Bilello and Mazzeo, in removing, from the underside of railroad cars, cylindrical tanks that hold the pressurized air used in operating brakes. In the course of this work he seriously injured his back. On March 12 he consulted Dr. David Lipton, who directed hospitaliza-

---

* Southern District of New York, sitting by designation.

tion at Smithtown General Hospital, where he was placed in traction. When this did not succeed in relieving his pain, Dr. Moses Ashkenazy, a neurosurgeon, and Dr. Lipton performed a laminectomy on March 28. Fluid developed in the wound and was removed in April. On May 23 Felice was readmitted for severe leg pain, and another laminectomy and a fusion were performed on June 1.

The controversy concerned the cause of the injury. The railroad's theory was that this had resulted from the mere act of lifting the heavy tank—a cause that would qualify under a workmen's compensation act but not under the FELA. Felice testified that the railroad had failed to see that the premises remained reasonably clean and safe, and that he had slipped on a concealed spot of grease and oil. Defendant's case against this consisted of various records made shortly after the accident which report Felice as saying nothing about slipping. These included:

(1) An accident report prepared on March 8, 1966, by Caradonna, Felice's foreman. Under the rubric "Explanation of how reported injury occurred: (including actions leading up to alleged accident)," the report said "Lifting a tank on the hilo with another helper—back just went." The report named Bilello as a witness and quoted him to the same effect.

(2) A card filled out by a nurse in the office of the company's Medical Examiner, Dr. V. A. Capozzi, on Felice's first visit on March 11, 1966, reciting as his history, "picking up a tank with a helper (expansion tanks for brakes) picked up into hylo, pain in lower back * * *," and a statement reported in the Medical Examiner's report of the same visit, reciting under the heading "Statement of injured": "states—picking up a tank with a helper (expansion tanks for brakes) picked up into hylo, pain in lower back * * *."

(3) A record of the Smithtown General Hospital on Felice's admission on March 12, 1966, reciting "PT while working, lifted a heavy object and felt a snap in his back with marked pain since then."

(4) Workmen's Compensation Attending Physician Reports dated March 14 and 21, 1966, signed by Dr. Lipton, which said in answer to the questions "State how injury occurred and give source of this information"; "lifted heavy object injury to back."

With respect to item (1), Caradonna testified that he "would say" Felice had reported the injury but was not certain. Felice admitted that he reported the injury to Caradonna. Caradonna conceded that there had been complaints that the pit and aisles of the shop were dirty with grease, and that he had observed this at times.

## I.

Plaintiff in his pre-trial memorandum had "reserved the right" to call Mazzeo; defendant had stated that it would call Bilello and Mazzeo. Neither was called. At plaintiff's request the court charged:

"Reference has been made by plaintiff to the failure of the defendant to call certain of its employees, Bilello and Mazzeo, who were eye witnesses to the accident. You may draw an inference, if you wish, that if such witnesses were called by the defendant they would have exposed facts unfavorable to the defendant."

Defendant made timely objection to this charge on the ground that the witnesses were equally available to both sides. The court overruled this, citing Case v. New York Central R.R., 329 F.2d 936 (2 Cir. 1964), and McCormick, Evidence § 249 (1954).

 We think that in the press of trial the judge read these authorities too hastily. The *Case* decision, also a FELA case, concerned the propriety of admitting evidence by the defendant why it had not produced employees claimed by the plaintiff to have seen the accident; while we referred to the established principle that unexplained failure by a railroad to call such employees would give

rise to an inference against it, and cited the well-known FELA case of Chicago & N. W. Ry. v. Kelly, 84 F.2d 569, 572 (8 Cir. 1936), we did not say that if the failure had not been explained, the inference against the employer was the *only* one the jury would have been entitled to draw. McCormick states, at p. 534, that where the uncalled witness' "relationship with one of the parties is such that the witness would ordinarily be expected to favor him"—citing the case of a family doctor—"then if such party does not produce his testimony, the inference arises that it would have been unfavorable." He then deals with the situation where as here "the witness would be as likely to be as favorable to one party as the other,"[1] and concludes that the judge "should permit either party to argue the inference against the adversary." But that does not mean that the *judge* may instruct the jury to consider the inference against one party and refuse to instruct concerning the inference to which that party is equally entitled against the other. If in such a situation one party requests a charge concerning the inference and the other objects, the judge, if he decides to charge on the subject at all, must do so in an even-handed manner, explaining to the jury why it would have been reasonable for either party to call the witness and what inference can logically be drawn from failure to do so.[2]

## II.

Plaintiff called Dr. Lipton. Just before the doctor took the stand, the records of plaintiff's treatment at Smithtown Hospital had been received without objection. Counsel told Dr. Lipton that he could refer to his notes to refresh his recollection if he so desired. He proceeded to testify that when he first saw Felice on March 12, 1966, he took a history, and this was that "while at work for the Long Island Rail Road the patient lifted a heavy object and slipped on grease and twisted himself in an awkward position." Cross-examination developed that this testimony was not based on the hospital records but on a note the doctor had with him stating "Lifted heavy object and slipped on grease." Although at first the doctor said that this was "either written by myself or taken as a history by my girl," and that he believed it was in his handwriting, further cross-examination indicated that the portion of the note relating to the cause of the injury was written by his girl, whose name the doctor could not recall.[3] Defendant's counsel objected to the testimony on the ground that no such record had been listed among the exhibits designated in the pretrial order. Still further cross-examination developed that Dr. Lipton had no recollection whatever of the history Felice had given.

A motion to strike the testimony was denied. It should have been granted.

1. We think it plain that this was the situation. Whatever might be the case in an action by a third party against the employer, we see no factual basis in this day and age for thinking that, in the absence of evidence of personal hostility, a subordinate employee would be more favorable to a corporate employer than to a fellow-worker.

2. In giving the charge, the trial judge stated "You may draw an inference, if you wish, that if such witnesses were called by the defendant they would have exposed facts unfavorable to the defendant." It would have been more accurate to characterize the inference, if one should be drawn by the jury against one side, as permitting the jury "to give the strongest

weight to the evidence already in the case in favor of the other side, and which has not been, but might have been, effectively contradicted or explained by the absent witnesses." Seligson, Morris & Neuburger v. Fairbanks Whitney Corp., 22 A.D.2d 625, 630, 257 N.Y.S.2d 706, 710 (1st Dept. 1965) (Breitel, J.). The jury should not be encouraged to base its verdict on what it speculates the absent witnesses would have testified to, in the absence of some direct evidence. On the facts of this case, however, the difference is largely semantic.

3. Dr. Lipton offered to search his records and give the Railroad's counsel the girl's name. Due to other engagements of the doctor, the defense never ascertained this.

Dr. Lipton's recollection of Felice's statement was not refreshed; no adequate foundation was, or apparently could have been, laid for qualifying the note as a record of past recollection, McCormick, Evidence §§ 277, 279 (1954); and, whether or not the note would be admissible under the Federal Business Records Act, 28 U.S.C. § 1732, an issue discussed below, defendant was entitled to rely on the pre-trial order.

### III.

This action was begun on April 4, 1966. Plaintiff was allowed to place in evidence, over objection, an Attending Physician's Medical Report by Dr. Ashkenazy dated May 18, 1966, which, under the same rubric with reference to the occurrence of the injury mentioned in item (4) above, recited:

> Pt. states: "I was lifting a tank and I slipped and threw my back out of line."

He was also allowed to put in evidence a letter from the same doctor dated August 16, 1966, to the Railroad's Claim Agent, stating that Felice had been referred by Dr. Lipton "with the history that he was lifting a heavy object of about 200 pounds of weight on 3–8–66 when he slipped on some grease and suddenly had to bear the weight in an awkward position. He felt a snap and a tear in his lower back." Since Dr. Ashkenazy was not called as a witness, these statements were admissible, if at all, only by reason of the New York or Federal Business Records Acts, CPLR 4518, 28 U.S.C. § 1732. We can limit ourselves to the federal statute since any attempt by plaintiff to bring himself within the New York statute would face the barriers not only of Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (1930), requiring that the entrant have witnessed the event or have obtained the information from one under

a "duty" to transmit the facts, but also of Williams v. Alexander, 309 N.Y. 283, 129 N.E.2d 417 (1955), excluding statements in medical records of "acts or occurrences * * * not germane to diagnosis or treatment, * * *." [4]

It would be hard to sustain the thesis that this court's many pronouncements concerning the Federal Business Records Act are wholly consistent, although any discord in the decisions is considerably less than in the dicta.[5] Perhaps it is time to return to the wise statement of Judge Learned Hand in United States v. Grayson, 166 F.2d 863, 869 (1948), approved both by Wigmore, § 1530, and by McCormick, §§ 283, 286, 290, and at least approaching the New York rule of Johnson v. Lutz, *supra:*

> In cases where an entrant records what he has heard, the document will be evidence of what they have told him only in case it appears that it was part of their regular course of business to report to him what the declarants themselves knew, as it was part of his business to record what they said. The statute did not mean to make competent whatever the entrant picked up from random sources, although it was part of his business to pick up information where and when he could and make a record of it. The "act, transaction, occurrence or event" which the entrant records must be one of which either he had knowledge, or which he learns from a declarant who shall "in the course of the business transmit the information for inclusion in the memorandum." "Multiple hearsay" is no more competent now than single hearsay was before [footnotes omitted].

█ To be sure, the last sentence, taken alone, would be misleading. Aside from the situation referred to by Judge Hand, where each declarant was under a

---

4. For evidence that this rule also has its difficulties of application, see the 3–2 decision in Del Toro v. Carroll, 33 A.D.2d 160, 306 N.Y.S.2d 95 (1st Dept. 1969).

5. The thoughtful and comprehensive opinion by Judge Tenney in Yates v. Bair Transport, Inc., 249 F.Supp. 681 (1965), analyzes most of the decisions up to that date.

business duty to make his report to the next declarant or the ultimate recorder, "multiple hearsay" for which the business record is the last level is admissible if each prior level falls within a recognized exception to the hearsay rule. Thus a hospital nurse's entry of what a resident told her of symptoms the patient had related to him would be competent evidence of the existence of the symptoms. The nurse's entry of the resident's declaration is competent under the Business Records Act to prove that the patient made the statement. The patient's statement would be admissible under the exception to the hearsay rule for declarations of bodily condition made to physicians consulted for treatment.

Hospital and doctors' records of a patient's account of the cause of an injury differ in the lesser trustworthiness both of the patient's statement and of the reporting and entry, particularly to the extent that the patient's account is not relevant to diagnosis and treatment. It is far from clear that it is part of the regular course of business for a nurse taking down a patient's history to report the extraneous details, cf. Taylor v. B. & O. R.R., 344 F.2d 281, 285 (2 Cir.), cert. denied, 382 U.S. 831, 86 S.Ct. 72, 15 L.Ed.2d 75 (1965), and in any event, even if the records are admissible under the Business Records Act to prove that the patient made the statement, there is no general exception to the hearsay rule which would admit evidence of the statement as proof of the fact stated. Even the minority of courts which have approved the receipt of a patient's account to a doctor or nurse about the cause of an accident in support of the patient's case have restricted the exception to statements about the general character of the cause—e. g., a fall as opposed to a collision—rather than reconstructions of the details. McCormick, Evidence § 266 (1954). There would seem to be no sensible basis for receiving an entry by a doctor or nurse concerning what a patient had said regarding the causes of an accident unless a live witness—the patient, the entrant or a bystander—

would have been allowed to testify to the statement. We have found only two cases in this circuit that have done so, Tucker v. Loew's Theatre & Realty Corp., 149 F.2d 677 (1945), and Lorensen v. Sinclair Refining Co., 271 F.2d 528 (1959). The *Tucker* opinion was by Judge Clark and the *Lorensen* per curiam was also written by him. See also his dictum in White v. Zutell, 263 F.2d 613, 615 (2 Cir. 1959). But the *Tucker* opinion pointed out that any error in receiving the statement would have been harmless, and the *Lorensen* per curiam said that "the statement appears to be quite colorless against the facts otherwise proven." Judge Clark's views with respect to the scope of 28 U.S.C. § 1732 were markedly broader than those of many of his colleagues, see Central R.R. Co. v. Jules S. Sottnek Co., 258 F.2d 85 (1958), cert. denied, 359 U.S. 913, 79 S.Ct. 588, 3 L.Ed.2d 574 (1959); United States v. New York Foreign Trade Zone Operators, Inc., 304 F.2d 792 (1962), and are scarcely consistent with statements in recent decisions, of which Juaire v. Nardin, 395 F.2d 373, 379 (2 Cir.), cert. denied, 393 U.S. 938, 89 S.Ct. 302, 21 L.Ed.2d 274 (1968), is an example.

The only basis for admitting statements by Felice concerning the cause of his injury made some time after the event would be as prior statements that would be consistent with his testimony at trial and would tend to overcome the impeachment that defendant sought to accomplish from the absence of any reference to slipping in the four reports on which it relied. Judge L. Hand's opinion for this court in United States v. Sherman, 171 F.2d 619, 621–622 (1948), cert. denied, Grimaldi v. U. S., 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738 (1949), is a leading authority against the use of consistent statements for rehabilitation. However, the apparent logic of the position that "since the self-contradiction is conceded, it remains as a damaging fact, and is in no sense explained away by the consistent statement," 4 Wigmore, Evidence § 1126 at 197 (3d ed. 1940),

is criticized by Wigmore on the ground, rather pertinent here where the self-contradiction is an alleged omission which the plaintiff denied, that the consistent statement might lead the trier to conclude that the self-contradiction had not occurred. *Id.* at 198–199, quoting Judge Cooley's opinion in Stewart v. People, 23 Mich. 63, 74 (1871). See also United States v. Corry, 183 F.2d 155, 157 (2 Cir. 1950). Furthermore there is a tension between a supposed general rule forbidding the use of consistent statements to rebut impeachment on the ground of inconsistent ones and the exception permitting the use of such statements to rebut a charge of recent contrivance, United States v. Fayette, 388 F.2d 728 (2 Cir. 1968); 4 Wigmore, Evidence § 1129. In a personal injury case not unknown to fame, a panel of this court including Judge L. Hand allowed use of consistent statements by a plaintiff for this purpose, Tompkins v. Erie R. Co., 90 F.2d 603, 605–606 (1937), rev'd on other grounds, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The New York courts have likewise done so. See, e. g., Donovan v. Moore-McCormack Lines, Inc., 266 App.Div. 406, 42 N.Y.S.2d 441 (1st Dept. 1943); Moore v. Leventhal, 303 N.Y. 534, 107 N.E.2d 892 (1952) (rehabilitation of defendant's witness); Zavlich v. Thompkins Sq. Holding Co., 10 A.D.2d 492, 200 N.Y.S.2d 550 (1st Dept. 1960).

 While a good deal of latitude should thus be accorded trial judges in admitting prior consistent statements for rehabilitation, the statement attributed to the plaintiff in Dr. Ashkenazy's Attending Physician's Medical Report of May 18, 1966, falls beyond this, even if— which we do not decide—the Federal Business Records Act would allow it to come in without oral testimony. A state-ment made two months after the injury has no sufficient logical tendency to show that statements made within a week were incomplete. And the exception allowing use of prior consistent statements to rebut a charge of recent contrivance requires that they be prior to the contrivance, see United States v. Sherman, supra, 171 F.2d at 622; Tompkins v. Erie R. Co., supra, 90 F.2d at 606 ("before he ever knew Mr. Nemeroff, his attorney"), Ferris v. Sterling, 214 N.Y. 249, 254, 108 N.E. 406 (1915); Crawford v. Nilan, 289 N.Y. 444, 450–451, 46 N.E.2d 512 (1943); McCormick, Evidence § 49 at 108–09, a condition not met here since the statement was made six weeks after this action was commenced. The statement allegedly made to Dr. Lipton's nurse on March 12, 1966, which was the basis for Dr. Lipton's report to Dr. Ashkenazy and for Dr. Ashkenazy's letter to the railroad's Claim Agent, might stand differently. It could well cast doubt on the completeness at least of Dr. Lipton's reports of March 14 and 21, on which the Long Island relied.[6] However, even if the nurse's note would have been admissible under the Federal Business Records Act, an issue on which we think it unnecessary to express an opinion since the question may not arise on a new trial, and if Dr. Lipton's report to Dr. Ashkenazy would have fallen under the same rubric, which seems unlikely, clearly Dr. Ashkenazy's description of the contents of that report in his letter to the Claims Agent was inadmissible hearsay.

 We need not decide whether any one of the three errors, standing alone, would demand reversal. Their combined effect requires that the judgment be reversed for a new trial consistent with this opinion.

---

6. Note also McCormick's suggestion that when the self-contradiction amounts to an importation of inaccurate memory, a "consistent statement made when the event was recent and memory fresh should be received in support," Evidence, § 49 at 109.