Clyde H. **DUNCAN**, Plaintiff-Appellee,

v.

**ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY**, a Corporation, Defendant-Appellant.

No. 72-1399.

United States Court of Appeals, Eighth Circuit.

Argued March 21, 1973.

Decided May 15, 1973.

Rehearing and Rehearing En Banc Denied June 20, 1973.

John L. Davidson, Jr., Robert M. Hamlett, Greenfield, Davidson & Mandelstamm, St. Louis, Mo., for defendant-appellant; Donald E. Engle, W. W. Dalton, St. Louis, Mo., of counsel.

Mortimer A. Rosecan, St. Louis, Mo., for plaintiff-appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and MEHAFFY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The defendant appeals from a jury verdict of $94,000 awarded to its employee in an action under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq.

Duncan, a locomotive engineer, employed by the St. Louis-San Francisco Railway Company (Frisco), sustained injuries when the train he was operating on a run from Memphis, Tennessee, to St. Louis, Missouri, collided with a Missouri Pacific train in Memphis on February 10, 1968. Duncan was proceeding in a northerly direction through Frisco's Memphis railroad yards on the mainline which would take the train to St. Louis. At this point, Duncan and the other crew members on the head engine observed a Missouri Pacific train, traveling in a southerly direction, approaching on the adjacent Missouri Pacific track. There are a number of switches located on Frisco's mainline which serve to divert trains onto other tracks. Many of these switches are equipped with targets which show at a distance whether the switch is in an open or closed position. However, other switches do not have targets, and their position must be determined by observing the position of the switching track itself. This latter type of switch is referred to as a "puzzle switch." Duncan's train reached one such puzzle switch and veered off the mainline track crashing into the side of the Missouri Pacific train. This occurred because the puzzle switch had been left open—*i. e.,* set for a diverging movement and not for a through movement.

Duncan was injured in this crash. He received medical treatment and hospitalization. On July 27, 1970, he commenced this action charging that the collision and his injuries resulting therefrom were directly and proximately caused by the negligence and carelessness of Frisco. He alleged that the injuries were permanent and had curtailed his leisure activities, shortened his work life and subjected him to pain and medical expenses for the rest of his life. The case was tried to a jury, and a judgment was entered in Duncan's favor on January 19, 1972.

Frisco contends on this appeal that the trial court erred:

(1) In failing to grant its motion for judgment notwithstanding the verdict because there was insufficient evidence to support a finding of negligence on the part of Frisco.

(2) In allowing Duncan's counsel to argue that the testimony given by one of his medical witnesses was unworthy of belief.

(3) By denying Frisco's motion for a mistrial where Duncan's counsel read into the record part of the depositions of other employees of Frisco during his case-in-chief and then, on final argument, commented on the failure of Frisco to call these same persons as witnesses.

(4) By instructing the jury that Frisco's Operating Rule 104 was applicable, that the rule had been violated and that a violation of the rule was negligence per se.

(5) In instructing the jury that its verdict might include damages for loss of future earnings reduced to present value because there was no evidence to support an award of damages for future loss of earnings and no evidence or instructions regarding the manner in which the present value of such an award should be computed.

(6) In refusing to instruct the jury that any award made to Duncan would not be subject to federal income tax.

We review these contentions seriatim.

(1) Frisco's argument concerning sufficiency of the evidence is: first, that the record is devoid of any evidence to support a finding that Frisco was negligent; and, second, that Duncan's failure to observe the position of the puzzle switch was the sole cause of the accident.

■ With respect to the first issue, Frisco agrees that the switch was lined for a diverging movement, but contends that for it to be liable, Duncan was obligated to prove either that the switch was lined for a diverging movement by Frisco, or that the switch had been lined for a diverging movement for a period of time sufficient to charge Frisco with knowledge of its position. We disagree. Under F.E.L.A. law, the railroad employer is required to provide its employees with a reasonably safe place to work. Chicago Great Western Railway Company v. Casura, 234 F.2d 441, 447 (8th Cir. 1956). Failure to do so constitutes negligence. Moreover, this duty is a nondelegable one. Payne v. Baltimore and Ohio Railroad Company, 309 F.2d 546, 549 (6th Cir. 1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1963). Accordingly, Frisco cannot escape liability by passing the blame for misalignment of the switch onto the other railroads using the switch, if the presence of the condition was found to constitute an unsafe place to work. To hold otherwise would be contrary to the position taken by the Supreme Court in Shenker v. Baltimore & Ohio R. Co., 374 U.S. 1, 11, 83 S.Ct. 1667, 1673, 10 L.Ed. 2d 709 (1963):

" * * * If recovery were denied in this case the railroads, by the simple expedient of doing each other's work, could tie their employees up in legal technicalities over the proper railroad to sue for injuries and perhaps remove from coverage of the Act a significant area of railroad activity. * * * "

■ In testing the sufficiency of the evidence, we are bound to view the evidence in the light most favorable to the prevailing party and to resolve all reasonable inferences in favor of that party. Our review of the record reveals that there is substantial evidence which supports a finding that Frisco was negligent. It is undisputed that the switch was lined for a diverging rather than a mainline movement, and that the track and puzzle switch were owned by Frisco. Duncan's theory was that the custom in this railroad yard and Rule 104[1] required that if someone used the switch, they either had to line the switch back for a mainline movement or post an authorized employee near enough to the switch to be able to line the switch for a mainline movement upon the approach of a train. Here, it is conceded that neither of these requirements was satisfied. Duncan contends that this fact, coupled with the undisputed fact that the switch did not have a target or other signal, constituted an unsafe place of work and, hence, negligence on the part of Frisco. Under his theory, this was true because he contended that it was impossible for him, as an engineer, to determine the position of the switch until it was too late to avoid the accident. His was a permissible theory, and there is substantial evidence in the record in support of it. There is also evidence which supports Frisco's position that the accident was caused by Duncan's negligence, and that theory was also submitted to the jury. The jury was correctly instructed that under F.E.L.A. law, con-

1. The pertinent portion of Operating Rule 104 reads as follows:
"The normal position of a main track switch is for main track movement and it must be lined and locked in that position except when changed for immediate movement. When a main track switch is lined in other than normal position an authorized employe [sic] must remain near enongh to switch to be able to line it for main track upon the approach of a train."

tributory negligence on the part of the employee does not bar his claim but only serves to reduce his damages in proportion to the amount of negligence attributable to the employee. See, 45 U.S.C. § 53. The jury chose to believe Duncan's evidence and rendered a verdict in his favor. In view of the fact that there is substantial evidence to support Duncan's theory, we cannot upset the jury's verdict.

■ (2) During his case-in-chief, Duncan called Dr. Raymond Ritter as one of his medical witnesses. Dr. Ritter was one of a number of doctors who treated Duncan for his injuries and, in some respects, his testimony was less favorable to Duncan than was that of other medical witnesses. In the course of his testimony, Dr. Ritter admitted that a portion of his practice was comprised of examining and treating employees of Frisco, and that he was paid by the railroad for those services. In his final argument, Duncan's counsel made reference to Dr. Ritter as a railroad doctor and suggested to the jury that, as such, his testimony was not entitled to as much weight or credibility as was that of other medical witnesses called to testify by Duncan. Frisco, on this appeal, contends that these comments of Duncan's counsel violated this Court's rule prohibiting the impeachment of one's own witness. We disagree.

■ The Eighth Circuit cases cited by Frisco are distinguishable from this one. They dealt with impeachment of one's own witness by cross-examination and not comments during final argument. We are satisfied that the comments objected to constituted a permissible exercise of counsel's right to comment on the weight and credibility that should be attributed to a witness's testimony. Counsel is to be afforded wide latitude in his argument to the jury, and the trial court has a great deal of discretion in regulating the scope of the argument. The comments here were confined to the evidence and reasonable inferences which could be drawn there-

from, and we hold that the trial court did not abuse its discretion in permitting these comments by Duncan's counsel. See, Chapman v. Alton R. Co., 117 F.2d 669, 672 (7th Cir. 1941).

(3) Duncan's counsel read into the record parts of depositions taken of other employees of Frisco who were members of the train crew at the time of the accident. The gist of the testimony admitted was: (a) that Operating Rule 104 applied to the puzzle switch; (b) that the position of the switch could not be determined prior to reaching the "blind spot;" (c) that the attention of Duncan and the other crew members was diverted by the approach of the Missouri Pacific train; and (d) that placing a target on the switch would have alerted the crew to its open position long before the engine reached it. This evidence was largely corroborative of Duncan's own testimony. Neither party called the crew members to testify in person. However, in his argument to the jury, Duncan's counsel commented on the failure of Frisco to do so. He suggested that the reason it failed to do so was because these men would have testified adversely to the railroad.

■ Frisco contends that the trial court erred in denying its motion for a mistrial. First, it contends that the witnesses, though employees of Frisco, were equally available to both parties and, therefore, the comments were improper. Second, it argues that because portions of the depositions were read into the record, counsel could not comment on the railroad's failure to call the witnesses, as to do so would allow the plaintiff to gain both benefit of the evidence and the inference. We disagree.

■ The propriety of arguments to the jury is a procedural question governed by federal law. See, e. g., Illinois Central Railroad Company v. Staples, 272 F.2d 829, 834 (8th Cir. 1959). Moreover, under federal law, counsel has great latitude in arguments to the jury, and considerable discretion is given to the trial court to control these argu-

ments. Yeargain v. National Dairy Products Corporation, 317 F.2d 779, 780 (8th Cir. 1963). We find no abuse of that discretion here.

The well-established rule in this Circuit is that:

"* * * [W]here witnesses are employees of one of the parties, they are not equally available to the other party, and failure to call them, where it appears that they may have knowledge of some material fact, warrants the inference that had they been called their testimony would have been adverse to the party failing to call them. * * *"

Illinois Central Railroad Company v. Staples, *supra* at 834 of 272 F.2d. Under this rule, the comments of Duncan's counsel were permissible.

Frisco argues that the above rule does not apply where the plaintiff is an employee of the railroad rather than an outsider. It supports its argument with a quote from a recent Second Circuit decision:

"* * * Whatever might be the case in an action by a third party against the employer, we see no factual basis in this day and age for thinking that, in the absence of evidence of personal hostility, a subordinate employee would be more favorable to a corporate employer, than to a fellow-worker."

Felice v. Long Island Railroad Company, 426 F.2d 192, 195 n. 1 (2nd Cir.), cert.

denied, 400 U.S. 820, 91 S.Ct. 37, 27 L. Ed.2d 47 (1970).

*Felice* is distinguishable from the instant case in that it involved comments by the judge and not counsel. In any event, while we are not persuaded that our long-standing rule should be limited to accord with *Felice,* the comments would still be permissible under a sound principle adopted from McCormick on Evidence in *Felice*:

"* * * [W]here * * * 'the witness would be as likely to be as favorable to one party as the other,' * * * the judge 'should permit either party to argue the inference against the adversary.' "

Felice v. Long Island Railroad Company, *supra* at 195.

We also are not persuaded that this Circuit's rule permitting comment by counsel on the failure of his adversary to call certain witnesses should be abandoned here because Duncan's counsel had previously introduced portions of the witnesses' depositions into evidence. See, Chesapeake & O. Ry. Co. v. Richardson, 116 F.2d 860, 865 (6th Cir.), cert. denied, 313 U.S. 574, 61 S.Ct. 961, 85 L.Ed. 1531 (1941).

(4) Frisco contends that the following instruction of the trial court was improper:

"If you find from all the evidence that the defendant failed to enforce or violated its Operating Rule No. 104 in either of the respects claimed by plaintiff;[2] * * * and if you fur-

2. Earlier in the instruction, the trial judge had set out the plaintiff's position:

"It is the position of plaintiff, Clyde Duncan, that at the time and place in question, the defendant was negligent in one or more of the following respects:

"(1) that the defendant failed to enforce and violated its Operating Rule No. 104 which required that the puzzle switch mentioned in evidence be lined and locked for a northbound main track movement;

"(2) that the defendant failed to enforce and violated its Operating Rule No. 104 which required that when the puzzle

switch was lined for a crossover or diverging movement, an authorized employee must remain near enough to be able to line the switch for a main track movement upon the approach of a train;

"(3) that the defendant failed to provide a target or other signal or device on said puzzle switch which would have alerted the plaintiff, or other members of the crew, that the switch was not lined and locked for a northbound main track movement and instead was lined for a diverging or crossover movement to the Missouri Pacific track east of the main track;

ther find that as a result of such actions or failure to act the defendant failed to exercise ordinary care to provide plaintiff with reasonably safe conditions and place of work; and that defendant was thereby negligent, and that such negligence either in whole or in part caused plaintiff to sustain injury, then your verdict should be in favor of the plaintiff and against the defendant."

■ Frisco argues that the court erred by assuming in this instruction that Rule 104 applied to the puzzle switch. We do not agree. Early in the trial, Frisco stipulated that as an engineer, Duncan "was bound by these rules," "had a right to rely upon these rules being obeyed," "was to operate the train in accordance with these rules," and "had the right to rely that the rules would be observed by others." Although later in the trial Frisco attempted, through one of its witnesses, to establish that the rule technically did not apply to this particular switch, at no time did it ask relief or modification from the stipulation. It is our view that the stipulation did provide that Rule 104 was applicable to the switch, and that it would not be appropriate to relieve Frisco from the stipulation here. See, Farmers Co.-Op. El. Ass'n Non-Stock, Big Springs, Neb. v. Strand, 382 F.2d 224, 231 (8th Cir.), cert. denied, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967). Moreover, there is substantial testimony in the record that Rule 104 did apply to the switch in question.

■ Frisco alternately contends that the court erred in failing to instruct the jury with respect to other applicable Operating Rules. We disagree. The trial court did instruct with respect to Rules 93 and 958.[3] Instructions as to the additional rules would have been cumulative and confusing, and their omission was not prejudicial.

■ We likewise find no merit to Frisco's contention that the trial court improperly instructed the jury that Rule 104 had been violated and that such a violation was negligence per se. The instruction, when read as a whole, required the jury to find that "the defendant had failed to enforce or violate its Operating Rule No. 104" and to further find that:

" * * * as a result of such actions or failure to act the defendant failed to exercise ordinary care to provide the plaintiff with reasonably safe conditions and place of work and that the defendant was thereby negligent * * *."

Frisco makes other objections to this portion of the instructions, but we are of the view that they are also without merit.

"(4) that in failing to enforce and in violating its said Operating Rule No. 104 and in failing to have said puzzle switch equipped with a target or other signal or device to warn plaintiff and his crew when said puzzle switch was lined for a diverging or crossover movement the defendant failed to exercise ordinary care to furnish plaintiff with a reasonably safe place and conditions to work."

3. "It is the position of the defendant that at the time and place in question Clyde Duncan was negligent in one or more of the following respects, in that he failed to observe and follow the following rules of the defendant:

"Rule 93—and I'm reading part of that rule: Within yard limits the main track may be used, providing that the trains must move within yard limits prepared to stop short of train or anything that may require the speed of a train to be reduced.

"Rule 958: Enginemen must, and firemen—when duties permit—will, keep a constant and vigilant lookout, carefully note all signals and observe the position of switches; also watch for obstructions and defective track.

"They must keep in mind location of all fixed signals in order that the absence of a signal may be noted and action taken in accordance with the rules.

"While passing through cities, towns and yards, and approaching public crossings, there must be no failure to keep a careful lookout ahead from both sides of the engine."

(5) Frisco's assertion that there was no evidence that Duncan would suffer loss of earnings in the future is clearly contrary to the record. Three of the medical witnesses, who treated the plaintiff, affirmatively testified that they believed his work life would have to be cut short of its ordinary length as a consequence of injuries sustained by him in the train accident. Frisco also argues that it was error to have permitted the jury to award damages to Duncan for loss of future earnings without there either being evidence or instructions regarding the manner in which the present value of such an award should be computed. Frisco makes this contention even though at trial it did not request such an instruction. We are persuaded that the trial court's instruction on this issue was sufficient. It served to alert the jury to the fact that they had to take into consideration the earning power of money and reduce it to its present value:

"The award of damages for the loss of contributions from future earnings, if any, must be reduced to its present cash value and adequate allowance must be made for the earning power of money."

We agree with the position taken by the Sixth Circuit in Pennsylvania Railroad Company v. McKinley, 288 F.2d 262 (6th Cir. 1961). *Contra,* Ballantine v. Central Railroad of New Jersey, 460 F.2d 540 (3rd Cir.), cert. denied, 409 U.S. 879, 93 S.Ct. 133, 34 L.Ed.2d 133 (1972). The Sixth Circuit held that:

" * * * a jury, unaided by specific testimony as to money values, could themselves, being told that the award should be only money value, properly apply the applicable rule."

Pennsylvania Railroad Company v. McKinley, *supra* at 265 of 288 F.2d. It reasoned that:

"Jurors are presumed to be intelligent people, generally aware, from today's economy and their own experience with it, of the earning value of money when placed in safe investments. While, indeed, more could have been said on the subject, if request had been made, we cannot say that the jury misunderstood the trial judge when he told them that for future loss of earning capacity they were to award only the 'money value' of such loss and to award only such sum as would 'compensate' for the plaintiff's loss of future earning capacity. They were aware that their verdict would be presently and immediately placing money in the hands of the plaintiff as 'compensation' for these future losses."
*Id.*

(6) Frisco's final contention is that the trial court erred in refusing to instruct the jury to the effect that any award which Duncan was to receive would not be subject to federal income taxes. Panels of this Court on two recent occasions have been faced with the same issue and, in both instances, have recognized that the courts and commentators disagree on the appropriateness of such an instruction and, upon the following reasoning, have declined to rule on it:

"In view of the state of the law and the record in the instant case, this Court will not pass on the issue at the present time. Even if this panel were to adopt the instruction, this panel would do so only prospectively. Therefore, such a holding is not necessary for resolution of the instant case. The question is more properly left open for future consideration and perhaps for *en banc* determination by the entire Court." (Footnote omitted.)

Rouse v. Chicago, Rock Island and Pacific Railroad Company, 474 F.2d 1180, at 1183 (8th Cir. 1973); Raycraft v. Duluth Missabe and Iron Range Railway Company, 472 F.2d 27 at 33 (8th Cir. 1973). We choose to dispose of the issue in the same manner here.

Affirmed.