**Richmond**

ROY HARPER, JR.

V.

B & W BANDAG CENTER, INC.

Record No. 810965.

January 20, 1984.

Present: All the Justices.

J. *Darrell Foster (Stanley J. Bangel; Bangel, Bangel & Bangel,* on brief), for appellant.

*Allan S. Reynolds (Harland H. Reid, II; Reynolds, Smith & Winters,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

On December 6, 1978, Roy Harper, Jr., was injured when a tire blew out on the truck he was operating, causing the vehicle to crash into an embankment. Harper brought this personal injury action against B & W Bandag Center, Inc. (Bandag), alleging that Bandag had improperly recapped the tire for Harper's employer, Lone Star Industries, Inc.

A jury trial resulted in a verdict in favor of Bandag, and the trial court confirmed the verdict. The sole question presented on appeal is whether the trial court erred in refusing Harper's Instruction No. 11, which would have told the jury:

> The Court instructs the jury that the unexplained failure of a party to produce a material witness raises a presumption that the testimony of such witness would have been adverse to the party thus failing to produce him.

The central issue at trial was whether the tire in question blew out because of improper recapping by Bandag or as a result of impact failure, for which Bandag was not responsible. On this issue, the parties' attention focused on the presence of a cut in the inner lining of the tire, found after the accident. Expert witnesses for both sides testified that had this cut been present at the time of the recapping procedure, the tire should have been rejected and not recapped for the use intended by Lone Star.

In an attempt to establish that the cut was present during the recapping procedure, Harper showed that, when the tire was examined after the accident, a straight yellow crayon mark was found alongside the cut. Harper then called Richard W. Brockwell, president of Bandag, as an adverse witness. Brockwell testified that Bandag employed inspectors to examine tire casings and that, in the inspection process, a yellow or white crayon is used to "mark whatever defects [the inspectors] may see."

Called later as a witness for Bandag, Brockwell testified that his firm used "standard" markings to indicate defects in tires and that a straight line was not standard. A straight line, Brockwell said, was "not the type of mark [he had] ever used in any recapping shop."

Brockwell also testified that his company employed three inspectors at the time the tire in question was recapped. One inspector examined a tire when it came into the shop, another made a final examination, and the third, the shop foreman, made periodic examinations "all during the day." At the time of trial, the first two inspectors had left Bandag's employment, and they were not further identified; however, the shop foreman, Harry Smith, remained employed by Bandag. Although Bandag subpoenaed Smith, it did not call him as a witness at trial.

Harper argues that Bandag's failure to call Smith supported the granting of Instruction No. 11. According to *Neeley* v. *Johnson*, 215 Va. 565, 211 S.E.2d 100 (1975), Harper points out, the "missing witness" instruction should be granted where the party requesting the instruction establishes a prima facie case that the absent witness is available and that his or her testimony would be material. Harper says he established both these elements and, hence, was entitled to the instruction.

We agree that the availability of the missing witness, Smith, was established. We disagree, however, that the materiality of his testimony was established.

*Materiality* in this context means that the person's testimony has "a certain or probable bearing on the proper determination of" the case. The testimony of a possible witness which is "for any reason comparatively *unimportant*, or *cumulative*, or *inferior* to what is already utilized, might well be dispensed with by a party on general grounds of expense

and inconvenience, without any apprehension [that the inference would be drawn]."

*Id.* at 574, 211 S.E.2d at 108 (citations omitted).

█ We believe that the present case fails the *Neeley* materiality test because there is no indication that the testimony of the missing witness, Smith, would have been anything but cumulative. Brockwell, although employed by Bandag in an executive capacity, displayed on the witness stand complete familiarity with the recapping procedures in Bandag's shop; he testified fully concerning the markings utilized in the shop to indicate defects in tires, and he was emphatic in stating that a straight line is never used. In addition, Robert M. Hill, an expert witness called by Bandag, testified that the mark found in the tire in question "isn't the kind of mark you put on in a retreading shop when you are indicating a defect in the tire." Hill said further, "You circle it, you don't underline it."

█ Furthermore, Instruction No. 11 suffers from the same internal vice as the instruction we considered and found wanting in *Neeley*;* the instruction is general in terms and does not identify the missing witness from whose absence adverse inferences may be drawn. Although the evidence identified Smith and established his availability, no evidence was presented concerning the identity or the availability of the other two inspectors employed in Bandag's shop at the time the tire in question was recapped. Yet, in its unrestricted form, Instruction No. 11 would have permitted the jury to draw adverse inferences not only from the absence of Smith but also, and quite improperly, from the absence of the other two inspectors.

For the reasons assigned, we hold that the trial court did not err in refusing Instruction No. 11. Accordingly, the court's judgment will be affirmed.

*Affirmed.*

---

* *Neeley* was a personal injury case. Over a period of approximately two and one-half years, the plaintiff was seen by at least fifteen physicians, but only four testified. Instruction E, granted in that case, was as general ·in its terms as the instruction granted here. Reversing, we said, *inter alia*, that under "Instruction E in its unrestricted form [the jury] could have improperly applied the [adverse] presumption to *all* the absent doctors, including those who may have been out of the jurisdiction, dead, or ill." 215 Va. at 575, 211 S.E.2d at 108.

RUSSELL, J., concurring.

I agree that the "missing witness" instruction was properly refused in this case for both of the reasons set forth in the Court's opinion. I would, however, go further.

The "missing witness" instruction is a survivor from the era of trial by ambush. Before the advent of discovery, it was difficult or impossible for a litigant to ascertain the nature of his opponent's evidence in advance of trial. During the trial itself, he often learned for the first time the identities of his opponent's witnesses and their connection with the case. If the opponent's evidence disclosed that a certain person might have knowledge of the facts, it would logically be expected that the opponent would bring that person with him to court to testify, and the opponent's failure to do so would arouse suspicion. Judicial statements to that effect, dating from before Lord Mansfield's time, gave rise to the presumption, perhaps more accurately called an inference, expressed in the "missing witness" instruction. *See generally* 2 Wigmore on Evidence §§ 285-291 (3d ed. 1940).

Little need remains for the instruction today. The advent of liberal discovery in civil cases has given litigants the means of ascertaining the identities of all persons known by all other parties to have knowledge of the facts. Those persons may then be interviewed, deposed, and subpoenaed to testify at trial. Witnesses do not "belong" to any party. Except in rare instances, they are equally available to each party. If they have a special relationship with a party which might give rise to bias, that fact may be adduced in evidence to affect their credibility.

As we pointed out in *Neeley* v. *Johnson*, 215 Va. 565, 574, 211 S.E.2d 100, 107 (1975), where a witness is equally available to both parties, "the failure to produce is *open* to an inference *against both parties*." It is manifestly unfair, in such circumstances, for the court to suggest to the jury that an inference should be drawn against one party alone. Yet the instruction is frequently sought in order to obtain such an unfair advantage, as it was in *Neeley*, where the plaintiff had been treated by fifteen physicians, but brought only four to court. We held that it was error to grant the "missing witness" instruction in *Neeley*. In addition to the cogent reasons stated there for denying the instruction, another equally compelling reason might have existed. The plaintiff simply might have lacked the financial resources required to bring fifteen expert medical witnesses to court. In my view,

such witnesses would be equally available to both parties because of the discovery rules.*

In *Felice* v. *Long Island Railroad Company*, 426 F.2d 192 (2d Cir. 1970), Judge Friendly observed that where the witness would be as likely to favor one party as another, either party should be permitted to argue the inference against his adversary, but the *judge* should not instruct the jury to draw the inference against one party and refuse an equal instruction against the other: "If . . . the judge . . . decides to charge on the subject at all, [he] must do so in an even-handed manner, explaining to the jury why it would have been reasonable for either party to call the witness and what inference can logically be drawn from failure to do so." *Id.* at 195.

I would dispense with the "missing witness" instruction for a further reason, equally applicable to civil and criminal cases. Counsel are always free to argue to the jury the inferences to be drawn, on the basis of reason and human experience, from the evidence. The unexplained failure of a party to produce available and material evidence may often give rise to such an inference, and is thus a proper subject for fair comment in the argument of counsel. McCormick on Evidence § 272, at 659 (2d ed. 1972). There is no reason for the trial judge to reinforce this comment on the evidence by a statement from the bench. It does nothing to enhance the jury's perception of the court's impartiality. The modern trend is increasingly to restrict such comment. McCormick, *id.*, at 657. Even in those jurisdictions in which the judge may properly comment on the evidence when instructing the jury, comments concerning a missing witness are not favored. *See U.S.* v. *Cotter*, 60 F.2d 689, 692 (2d Cir. 1932, L. Hand, J.). In Virginia the judge does not ordinarily comment on the evidence, but instead leaves the inferences to be drawn therefrom to the arguments of counsel and to the jury's reasoning. I would so treat the "missing witness" inference and, saluting the "missing witness" instruction for its notable service in past ages, now accord it a decent burial.

---

* I do not agree with the observation in *Neeley* that a treating physician is more "available" to his patient than to his patient's opponent because of the physician-patient privilege. No privilege exists where the physical or mental condition of the patient is in issue. Code § 8.01-399.