COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty,
           Beales, Powell and Alston
Argued at Richmond, Virginia


JOHNATHAN WESLEY McMILLAN
                                                            OPINION BY
v.      Record No. 2074-07-2                        JUDGE CLEO E. POWELL
                                                         DECEMBER 22, 2009
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF HANOVER COUNTY
John Richard Alderman, Judge

Charles C. Cosby, Jr. (Boone, Beale & Cosby, on brief), for
appellant.

Richard B. Smith, Special Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


Johnathan Wesley McMillan ("McMillan") appeals his convictions for attempted capital

murder, in violation of Code §§ 18.2-25 and 18.2-31, and possession of a concealed weapon by a

convicted felon, in violation of Code § 18.2-308.2(A).  He argues that the Commonwealth failed

to produce sufficient evidence to convict him of either charge.  A panel of this Court affirmed

McMillan's conviction for attempted capital murder.  See McMillan v. Commonwealth, Record

No. 2074-07-2 (Va. Ct. App. Mar. 17, 2009).  A majority of the panel reversed McMillan's

conviction of possession of a concealed weapon by a previously convicted felon, concluding that

the knife McMillan possessed was neither one of those items enumerated in Code § 18.2-308(A)

nor was it a weapon.

The Commonwealth petitioned for rehearing en banc, asserting the panel erred in finding

the evidence was insufficient to support McMillan's conviction of possession of a concealed

weapon by a felon. We granted the Commonwealth's petition for rehearing on that issue and stayed the panel mandate.[1] On rehearing en banc we hold that the evidence, viewed in the light most favorable to the Commonwealth, neither establishes that the knife McMillan possessed was one of the items enumerated in Code § 18.2-308(A) nor that it is a weapon of like kind to one enumerated. Therefore, we reverse appellant's conviction for possession of a concealed weapon by a convicted felon and dismiss the indictment.

## I. BACKGROUND

In determining the sufficiency of the evidence, we consider the evidence in the light most favorable to the Commonwealth, as it prevailed below, and grant to it all reasonable inferences. Morris v. Commonwealth, 272 Va. 732, 734, 636 S.E.2d 436, 437 (2006). So viewed, the evidence proves that on September 8, 2006, police pursued McMillan in a high speed chase that ended when McMillan intentionally crashed the vehicle that he was driving into a vehicle driven by a Virginia State Police Trooper, Nathan Lee Powell. After the crash, Trooper Powell searched the truck McMillan had been driving and found a knife in a sheath riveted to the inside of the driver's side door. Trooper Powell testified that the knife was a scuba diver's knife with a full tang. The knife was approximately eight and one half inches long, less than four inches of which constituted the blade. Trooper Powell described the knife as "rigid on one side" and "smooth on the other." McMillan, who had previously been convicted of at least one felony, told Trooper Powell that he carried the knife for protection.

---

[1] This Court's decision to grant rehearing en banc vacates only the prior decision related to the issue or issues presented by the party requesting a rehearing. Ferguson v. Commonwealth, 51 Va. App. 427, 432-33, 658 S.E.2d 692, 695 (2008).

## II. ANALYSIS

The law prohibits a felon from "knowingly and intentionally carry[ing] about his person, hidden from common observation, any weapon described in subsection A of § 18.2-308." Code § 18.2-308.2(A). Code § 18.2-308(A) enumerates several weapons, including, "any dirk, bowie knife, switchblade knife, ballistic knife, machete, razor, slingshot, spring stick, metal knucks, or blackjack . . . ." This section also prohibits concealing "any weapon of like kind as those enumerated . . . ." Id. McMillan makes two arguments in support of his claim that the evidence was insufficient to convict him of possession of a concealed weapon by a convicted felon. First, he argues that the evidence failed to prove that his knife was a weapon within the scope of Code § 18.2-308.2(A). Next, he argues that his knife was not hidden from common observation. We agree that the knife McMillan possessed was not a weapon and, therefore, we do not need to address McMillan's argument that the item was not concealed.

To convict McMillan under Code § 18.2-308.2(A), the Commonwealth must prove, *inter alia*, that the knife McMillan possessed is one of the statutorily proscribed items or a "weapon of like kind." Code § 18.2-308.2(A); see also Thompson v. Commonwealth, 277 Va. 280, 287, 673 S.E.2d 469, 472 (2009); Farrakhan v. Commonwealth, 273 Va. 177, 182, 639 S.E.2d 277, 230 (2007). When reviewing whether the evidence is sufficient, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). "The construction of a statute, however, is a question of law reviewed de novo on appeal." Thompson, 277 Va. at 287, 673 S.E.2d at 472 (citing Farrakhan, 273 Va. at 180, 639 S.E.2d at 229.

In Farrakhan, 273 Va. at 182, 639 S.E.2d at 230, our Supreme Court provided an analytic framework for evaluating whether an item falls within the purview of this statute. The initial

- 3 -

inquiry is whether the bladed item is one enumerated in the statute.  Id.  If it is, the evidence is

sufficient to convict and the inquiry ends.  Id.  However, if the bladed item is not enumerated, the

next question is:  is the bladed item a weapon?  Id.; Harris v. Commonwealth, 274 Va. 409, 415,

650 S.E.2d 89, 91-92 (2007).  The analysis ends here if the bladed item is not a weapon.

Farrakhan, 273 Va. at 183, 639 S.E.2d at 230; Harris, 274 Va. at 415, 650 S.E.2d at 92.  Only if

the item is a weapon, does "the analysis continue[] to determine if the item possesses such

similar characteristics to the enumerated items in Code § 18.2-308(A) such that its concealment

is prohibited."  Farrakhan, 273 Va. at 182, 639 S.E.2d at 230.

Applying that framework here, we must first determine whether the knife McMillan

possessed is one of the items enumerated in Code § 18.2-308(A).  Our Supreme Court has

> previously defined a "dirk" as "'a long straight-bladed dagger'" or
> "'a short sword.'"  Wood v. Henry County Public Schools, 255 Va.
> 85, 95 n.6, 495 S.E.2d 255, 261 n.6 [(1998)] (quoting Webster's
> Third New International Dictionary 642 (1981)); see also Richards
> v. Commonwealth, 18 Va. App. 242, 246 n.2, 443 S.E.2d 177, 179
> n.2 (1994) (defining a dirk as "any stabbing weapon having two
> sharp edges and a point, including daggers, short swords, and
> stilettos").  A "dagger" is "a short knife used for stabbing," and its
> definition refers to a "stiletto."  Webster's Third New International
> Dictionary 570 (1993).  However, the definition of a "stiletto" is
> not particularly helpful, as it is defined as "a slender dagger with a
> blade that is thick in proportion to its breadth."  Id. at 2243.  The
> definition of a "sword" is more instructive:  "a weapon with a long
> blade for cutting or thrusting set in a hilt usually terminating in a
> pommel and often having a tang or a protective guard where the
> blade joins the handle."  Id. at 2314.

Thompson, 277 Va. at 290, 673 S.E.2d at 473.

The Court has also said that

> [a] "bowie knife" is "'a large hunting knife adapted [especially] for
> knife-fighting'" with a "'10 to 15 inch [] long'" blade.  [Wood, 255
> Va. at 95 n.6, 495 S.E.2d at 261 n.6] (quoting Webster's Third
> New International Dictionary 262).  A "switchblade knife" is "'a
> pocketknife having the blade spring-operated so that pressure on a
> release catch causes it to fly open.'"  Id. (quoting Webster's Third
> New International Dictionary 2314).  A "ballistic knife" is "'any

- 4 -

knife with a detachable blade that is propelled by a spring-operated mechanism.'" Id. (quoting Code § 18.2-308(N)).

Id. at 288 n.5, 673 S.E.2d at 472 n.5.

The knife McMillan possessed is clearly neither a "switchblade" knife nor a "ballistic knife," and the Commonwealth does not claim otherwise. On appeal, the Commonwealth argued that McMillan's knife was either a dirk or a bowie knife or a "weapon of like kind" to one of those knives.

Observation of McMillan's knife, however, reveals that it does not match the description of a dirk or bowie knife. Unlike a dirk, the knife McMillan possessed lacked a "long blade" and a "protective guard where the blade meets the handle"[2] or a "hilt . . . terminating in a pommel."[3] Id. at 290, 673 S.E.2d at 473. As previously stated, the blade on McMillan's knife could hardly be described as long in that it measured approximately 3.75 inches. Further observation reveals that McMillan's knife does not fit the definition of a dirk, described as any stabbing weapon having two sharp edges and a point. The knife at issue has one sharp edge and one manifold edge; approximately half of which is serrated and the remainder of which is blunt. The blunt portion culminates in the point, making its stabbing capability dubious. An examination of the knife at issue similarly reveals that it does not meet the definition of a "bowie knife." As

---

[2] Trooper Powell testified that the knife had a "full tang." A "tang" is

> a piece that forms an extension from the blade or analogous part of an instrument (as a table knife or fork, file, chisel, or sword) and connects with the handle and that may be a thin flat plate on each side of which a rounded piece is secured to form the handle or that may be a tapered piece inserted into the haft or handle.

Webster's Third New International Dictionary 2336 (1993). Thus, the "full tang" described by Trooper Powell means that the blade of McMillan's knife continued through the entire handle.

[3] A "pommel" is "the knob on the hilt of a sword or saber." Webster's Third New International Dictionary, supra, at 1762.

- 5 -

previously defined by our Supreme Court, a bowie knife is a large knife that has been modified to be a fighting knife. Id. at 288 n.5, 673 S.E.2d at 472 n.5. The remainder of that definition that our Supreme Court quoted with approval in Thompson, 277 Va. at 288 n.5, 673 S.E.2d at 472 n.5, provides that the long blade of a bowie knife is typically curved concavely to a point. Wood, 255 Va. at 95 n.6, 495 S.E.2d at 261 n.6 (citing Webster's Third New International Dictionary 262 (1981)); see also Webster's Third New International Dictionary, supra, at 262. The blade of McMillan's knife is 3.75 inches, and the total length of the knife is 8.25 inches. The blade is straight on one side and serrated on a portion of the other side. No part of the blade is concave. Moreover, nothing in the record indicates that an 8.25 inch knife is large for a knife or that this knife had been adapted for fighting. Thus, the evidence is insufficient to prove that the knife McMillan possessed was a bowie knife.

Because the item McMillan possessed is not one of the enumerated items in Code § 18.2-308(A), the analysis then turns to whether the item is a weapon. For an item "to be a 'weapon' within the definition of 'weapon of like kind,' the item must be designed for fighting purposes or commonly understood to be a 'weapon.'" Harris, 274 Va. at 415, 650 S.E.2d at 92 (quoting Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). Our Supreme Court was recently called upon to determine whether a butterfly knife is a statutorily proscribed weapon or one of like kind. Thompson, 277 Va. at 288-89, 673 S.E.2d at 472-73. In Thompson, a police officer testified that knives like the butterfly knife at issue are "'edge weapons [that] are very dangerous for police officers, due to the fact that they are easily concealed, and specifically ones like [Thompson's] that only require one hand to operate are very dangerous'" and that he has retrieved "'this exact type of knife' . . . from gang members on several occasions." Id. at 285, 673 S.E.2d at 470. Our Supreme Court concluded that there was sufficient evidence in the record to prove that

> Thompson's butterfly knife is a "weapon" because the evidence at
> trial concerning the knife's physical characteristics and method of
> operation established that it is "designed for fighting purposes" and
> is "commonly understood to be a 'weapon.'" Farrakhan, 273 Va.
> at 182, 639 S.E.2d at 230; accord Harris, 274 Va. at 415, 650
> S.E.2d at 92.

Id. at 288, 673 S.E.2d at 472-73. Our Supreme Court went further to cite cases from other

jurisdictions that discussed the nature of a butterfly knife, its physical characteristics, and its

reputation as a weapon. Id. (citing Taylor v. McManus, 661 F. Supp. 11, 13 (E.D. Tenn. 1986);

State v. Powell, 798 S.W.2d 709, 711 (Mo. 1990); City of Columbus v. Dawson, 501 N.E.2d

677, 679 (Ohio Ct. App. 1986)).

Such evidence is lacking, however, from the facts of this case regarding the knife in

question. At McMillan's trial, the police officer testified that McMillan possessed a scuba knife.

Unlike the police officer in Thompson, 277 Va. at 285, 673 S.E.2d at 470, the officer in this case

did not testify about the knife's method of operation, the purpose for which it was designed, or

its commonly understood uses. Therefore, the record is devoid of any facts on which one could

find that the knife is either designed for fighting purposes or commonly understood to be a

weapon.

Though McMillan testified that he carried the knife for protection, this statement does not

change the physical characteristics of the knife he possessed or its method of operation such that

it becomes a weapon.[4] See Thompson, 277 Va. at 291, 673 S.E.2d at 474 (stating that "as we

---

[4] In his dissent, Judge Kelsey affords great weight to the Supreme Court of Virginia's
language in Farrakhan: "Because an offense under Code § 18.2-308(A) is 'possessory' in nature,
it is committed upon concealment. Subsequent use or circumstances may not be considered in
the definitional analysis of 'weapon.'" *Infra* at 16. The dissent reasons that this language
supports the proposition that the individual appellant's intended use at the moment he conceals
the item is relevant as to whether the item appellant possessed is a proscribed item or a weapon
of like kind. Id. Indeed, Judge Kelsey cites to the Supreme Court of Virginia's decision in
Thompson for the proposition that "a knife can be a weapon either by design or common use."
Id. This overly literal interpretation of the language in Farrakhan, however, ignores the
remainder of the paragraph the dissent cited and eviscerates the analytic framework laid out in

explained in Farrakhan, '[s]ubsequent use or circumstances may not be considered in the definitional analysis of "weapon."'" (citation omitted)). Nor can the purpose for which an individual carries a knife be dispositive as to whether that knife is either "designed for fighting purposes" or "commonly understood" to be a weapon. Cf. State v. Giltner, 537 P.2d 14, 16 (Haw. 1975) (holding that a scuba diver's knife is not a "deadly or dangerous weapon").

Though the knife in question, much like a kitchen knife, pocket knife, box cutter, butterfly knife, or letter opener, could be a dangerous instrument in the hands of a person with criminal intent, the issue before this Court is "what is proscribed by statute as unlawful not simply what may be dangerous." Farrakhan, 273 Va. at 183, 639 S.E.2d at 230. We strictly construe penal statutes against the Commonwealth. Harris, 274 Va. at 414, 650 S.E.2d at 91 (citing Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). We conclude that the evidence before us does not establish that McMillan's "scuba" knife is designed for fighting purposes nor is it commonly understood to be a weapon. Because we conclude that McMillan's knife is neither enumerated in the statute nor is it a weapon, we need not address whether it is a weapon of like kind.

### III. CONCLUSION

For these reasons, we reverse and vacate McMillan's conviction for possession of a concealed weapon by a convicted felon, in violation of Code § 18.2-308.2(A).

Reversed and dismissed.

---

Farrakhan and applied in Thompson. A logical reading of these cases and the analytic framework set forth therein indicates that it is the *common* use, not intended use by an individual, that is relevant to whether an item is a weapon of like kind under Code § 18.2-308.2(A). Had Farrakhan intended to use the chef's knife to perpetrate a robbery at the moment he concealed it, as one could infer from the facts of that case, the chef's knife would still only be a cooking instrument and not a proscribed item or a weapon of like kind. Thus, McMillan's intended use for the knife he concealed is only relevant, if at all, to a determination of the knife's common use.

Petty, J., with whom Alston, J., joins, concurring.

Because the issue before us does not involve the constitutional over-breadth or vagueness of this statute, we must once again limit our discussion to whether this particular knife is a dirk, bowie knife or a weapon of like kind. For the reasons set out in the majority opinion, I agree that it is not and I concur in both the reasoning and the conclusion of the majority. I write separately simply to point that, while we analyze this particular knife and thus decide this case, once again we fail to provide real guidance to police, prosecutors or the citizens of this Commonwealth as to exactly what conduct is criminal under Code § 18.2-308(A).

The statutory language we are called upon to define—"dirk, bowie knife . . . or weapon of like kind"—has appeared in the Code of Virginia since at least 1849. Title 54, Chapter 7, § 7 Code of Virginia (1849) made it illegal to "habitually, carry about [one's person] hid from common observation, any pistol, dirk, bowie knife or weapon of like kind." Apparently, at that time, a mere thirteen years after the death of the designer of one of the knives in question, Colonel James Bowie, Virginians did not have much trouble differentiating this weapon, or weapons like it, from more utilitarian knives such as hunting knives.

By the end of the twentieth century, however, that recognition had apparently faded. In 1998 our Supreme Court was first called upon to determine which bladed weapons fell within the scope of the statute. In Wood v. Henry County Public Schools, 255 Va. 85, 495 S.E.2d 255 (1998), the Court concluded that a pocketknife was "neither a dirk, bowie knife . . . nor a weapon of like kind." Id. at 94, 495 S.E.2d at 260. Since that date, our Supreme Court and this Court have considered the applicability of Code § 18.2-308(A) to various types of knives on no fewer than ten separate occasions, and the only consistency in the conclusions reached has been inconsistency.

- 9 -

In 1998, we held that a kitchen knife was not a weapon of like kind. Ricks v. Commonwealth, 27 Va. App. 442, 499 S.E.2d 575 (1998). Seven years later, we were again called upon to consider the same type of knife, and we reached the same conclusion. Goodwin v. Commonwealth, No. 2006-04-1 (Va. Ct. App. July 12, 2005) (An eight to ten inch long steak knife with a six inch blade is not weapon of like kind.). That same year, however, we held that a twelve and three-quarter inch kitchen knife with a seven and three-quarter inch blade was a weapon of like kind because of the offensive manner in which it was used. Farrakhan v. Commonwealth, No. 1804-04-4 (Va. Ct. App. Nov. 29, 2005). However, our Supreme Court reversed, holding that the offense of carrying a concealed weapon is completed at the time of concealment, and, thus, the subsequent use of the knife was irrelevant in determining if it was a weapon. Farrakhan v. Commonwealth, 273 Va. 177, 639 S.E.2d 227 (2007).[5]

We have also applied the statute to other types of potentially dangerous cutting instruments. For example, we concluded that a box cutter was a weapon of like kind to a razor, O'Banion v. Commonwealth, 33 Va. App. 47, 531 S.E.2d 599 (2000) (en banc), and that a razor blade is a razor under Code § 18.2-308(A), Sykes v. Commonwealth, 37 Va. App. 262, 556 S.E.2d 794 (2001). Our Supreme Court affirmed our decision in O'Banion in an unpublished order. O'Banion v. Commonwealth, No. 002014 (Va. May 7, 2001). However, six years later, it overruled O'Banion and held that a box cutter was not a weapon of like kind. Harris v. Commonwealth, 274 Va. 409, 650 S.E.2d 89 (2007). The Court reasoned that "[m]erely because a box cutter contains a sharp-edged, razor-type blade that is retractable does not mean that a box

---

[5] Apparently, our Supreme Court's holding in Farrakhan has not completely answered the question of when is a knife not a weapon. In Green v. Commonwealth, No. 0771-09-2 (Va. Ct. App. Dec. 22, 2009), this day decided, a panel of this Court reversed the trial court's conclusion that, although the knife, which "most closely resembl[ed] a kitchen steak knife," was "not a knife designed for weaponry," it came within the purview of the statute because the "appellant possessed it for self-defense." Green, slip op. at 2-3.

- 10 -

cutter meets the definition of the item 'razor' enumerated in Code § 18.2-380(A)." Id. at 415, 650 S.E.2d at 91. While recognizing that "a box cutter is a potentially dangerous instrumentality and had, in fact, been used as such in the past" our Supreme Court explained that "it is . . . the role of the General Assembly, not this Court, to craft any needed revisions to Code § 18.2-308(A) and to decide what items to include within the statute's proscription." Id. at 415, 650 S.E.2d at 92.

Finally, this Court has held that a butterfly knife was a weapon of like kind, Kingrey v. Commonwealth, No. 2202-97-2 (Va. Ct. App. July 13, 1999), and that a folding knife that locks open was a weapon of like kind as well, Ohin v. Commonwealth, 47 Va. App. 194, 622 S.E.2d 784 (2005). However, the Supreme Court later concluded that a butterfly knife is not a weapon of like kind. Thompson v. Commonwealth, 277 Va. 280, 673 S.E.2d 473 (2009).

A review of these cases demonstrates the perplexity that exists among law enforcement officers, prosecutors, trial judges, and appellate judges over the scope of this statute. In an attempt to define its terms, we have resorted to embracing the "I know it when I see it" logic of Justice Stewart, see Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J. concurring),[6] by including a picture of the offending knife in our opinion. See infra at 15, 20; see also Gilliam v. Commonwealth, 49 Va. App. 508, 515, 642 S.E.2d 774, 778 (2007). Moreover, on occasion, we even find the same jurist coming to a different conclusion when considering a similarly described knife. Compare Kingrey, No. 2202-97-2 (affirming a conviction under Code § 18.2-308(A) and concluding that an open butterfly knife closely resembles a dirk), with Thompson, 277 Va. at 280, 673 S.E.2d at 469 (reversing a conviction under Code § 18.2-308(A) and concluding that

---

[6]Justice Stewart famously wrote in his concurring opinion in Jacobellis: "I shall not today attempt further to define the kinds of material I understand to be embraced within [the definition of "hardcore pornography"]; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." Jacobellis, 378 U.S. at 197.

- 11 -

the "evidence was insufficient as a matter of law to establish beyond a reasonable doubt that the butterfly knife is 'of like kind' to a dirk or any other weapon enumerated in Code § 18.2-308(A)").

I recognize the very legitimate and necessary purpose of Code § 18.2-308—"to interdict the practice of carrying a deadly weapon about the person, concealed and yet so accessible as to afford prompt and immediate use." Schaff v. Commonwealth, 220 Va. 429, 430, 258 S.E.2d 574, 574-75 (1979). I also recognize, however, that there are very legitimate and lawful reasons to carry a concealed sharp instrument that is capable of injuring another person. Clearly, the General Assembly did not intend to prohibit all such conduct simply because of that capability. Because the "[s]ubsequent use or circumstances may not be considered in the definitional analysis of [a] 'weapon,'" Farrakhan, 273 Va. at 182, 639 S.E.2d at 230, we must, therefore, continue to engage in an *ad hoc* comparison of the knife in question with weapons that are today primarily found in museums and knife collections.

In doing so, I am concerned that we are forgetting that a "statute or ordinance [must] be sufficiently precise and definite to give fair warning to an actor that contemplated conduct is criminal." Tanner v. City of Virginia Beach, 277 Va. 432, 439, 674 S.E.2d 848, 852 (2009) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983); Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). We require this level of precision because "[i]t is simply not fair to prosecute someone for a crime that has not been defined until the judicial decision that sends him to jail." Sorich v. United States, No. 08-410, slip op. at 4 (U.S. Feb. 23, 2009) (Scalia, J., dissenting).[7]

---

[7] As the Attorney General conceded at oral argument, if this knife were considered a bowie knife or weapon of like kind, every hunter who carried a similar sheath knife in order to field dress his game would be guilty of a crime if the knife was concealed by, for instance, a jacket. I am confident that this would come as more than just a mild surprise to every sportsman in this Commonwealth.

Time has not been kind to Code § 18.2-308(A). Whatever clarity and certainty it had in 1849 has been obfuscated by a series of confusing and sometimes contradictory interpretations as we have attempted to conform nineteenth century language to twenty-first century reality. As a result, it now provides neither notice to the citizenry of what conduct it criminalizes, nor does it provide guidance to the members of law enforcement and the prosecutors who must enforce it or the judges who must apply it. Additionally, because a literal application of this statute excludes many dangerous bladed weapons and ignores the intent of the accused, it does not effectively "interdict the practice of carrying a [concealed] deadly weapon about the person." Schaff, 220 Va. at 430, 258 S.E.2d at 574-75. For these reasons, I believe that it is time for the General Assembly to craft a replacement and to "[salute] the [statute as currently written] for its notable service in past ages [and] now accord it a decent burial." Harper v. B & W Bandag Center, 226 Va. 469, 474, 311 S.E.2d 104, 107 (1984) (Russell, J., concurring).[8]

---

[8] I am acutely aware that the most recent statistics show that forty-eight citizens of this Commonwealth were murdered by an assailant with a knife in 2007. See Va. Dep't of Health, Off. of the Chief Med. Examiner's Ann. Rep. (2007). However, I am also aware that the weapon involved in these crimes is much more likely to be a kitchen knife, box cutter, or butterfly knife—weapons excluded from the coverage of Code § 18.2-308.2(A)—than a bowie knife, dirk or weapon of like kind. See, e.g., Alastair H. Leyland, Homicides Involving Knives and other Sharp Objects in Scotland, 1981 – 2003, J. of Pub. Health, Apr. 2006, at 146 ("[K]itchen knives may be used in at least half of all stabbings."). Thus, I do not question the wisdom of the policy behind Code § 18.2-308.2(A), I simply question whether the current archaic language is sufficient to advance that policy. Cf. Marsh v. Kansas, 548 U.S. 163, 186 (2006).

Kelsey, J., with whom McClanahan, J., joins, dissenting.

I am not prepared to signal, as some of my colleagues are, my willingness to strike down Code § 18.2-308(A) as unconstitutionally vague. *Ante* at 9, 12-13; *post* at 17. Neither party has raised that issue in this case. And we do not have the benefit of either briefing or oral argument on the subject. I also question whether it is "appropriate for judges to heap either praise or censure upon a legislative measure that comes before them," Kansas v. Marsh, 548 U.S. 163, 186 (2006) (Scalia, J., concurring), particularly when doing so concludes with the suggestion that the legislature should give the judicially censured statute a "decent burial," *ante* at 13.

The only issue before us is whether McMillan's knife — which he admittedly possessed "for protection" and kept by his side in a sheath riveted to the inside of the driver's door of his vehicle — was a weapon of "like kind" to one of the knives listed in Code § 18.2-308(A). The trial judge, sitting as factfinder, found it was. Finding no error of law in the trial judge's reading of the statute and no factual insufficiency in the evidence, I would affirm his judgment.

Code § 18.2-308(A) treats a knife as a "weapon" if it is either "designed for fighting purposes" or nonetheless "commonly understood" to be a weapon. Thompson v. Commonwealth, 277 Va. 280, 288, 673 S.E.2d 469, 472-73 (2009) (citation omitted). Thus, a knife becomes a statutory weapon either by design *or* by common use. If a knife constitutes a weapon under either definition, the knife fits within the "like kind" category only if it is "substantially similar" to one of the knives specifically mentioned in Code § 18.2-308(A). Id. at 290, 673 S.E.2d at 473.

In this case, the trial court found that McMillan's knife was a weapon substantially similar to a "dirk" — one of the knives specifically mentioned in Code § 18.2-308(A). "A 'dirk' or weapon of like kind is any stabbing weapon having two sharp edges and a point, including *daggers*, short swords and stilettos." Richards v. Commonwealth, 18 Va. App. 242, 246 n.2, 443

- 14 -

S.E.2d 177, 179 n.2 (1994) (emphasis added), quoted with approval in Thompson, 277 Va. at 290, 673 S.E.2d at 473. A *dagger* is nothing more than a fixed-blade "short knife used for stabbing" purposes. Thompson, 277 Va. at 290, 673 S.E.2d at 473.

The inscription on McMillan's fixed-blade knife identifies it as a Hammond A.B.C., type 2605. The primary bevels on the symmetrically tapered blade create a spear-point tip centered along the blade's long axis. One edge has a straight v-shaped bevel. The other edge has a beveled tip followed by a sharpened serration. Both the straight and serrated edges are razor sharp. The hilt lacks a protruding guard, but uses instead a deeply indented tang — notched for enhanced grip — to accomplish the same purpose.[9] The knife has three large holes drilled though the skeleton handle. The actual knife, pictured below,[10] measures about 8½ inches long:



This knife is nothing "like a kitchen knife, pocket knife, box cutter, butterfly knife, or letter opener." *Ante* at 8. Instead, McMillan's knife is an aggressively crafted weapon "designed for stabbing purposes like a dagger," Thompson, 277 Va. at 291, 673 S.E.2d at 474, substantially similar (though not identical) in design and function to a dirk.

In reaching this conclusion, I see no reason why we should not also take into account McMillan's statement about *his* ongoing use of the knife as a weapon for his personal protection.

---

[9] "A hilt is the 'handle of a weapon or tool, esp. of a sword or dagger.'" Ohin v. Commonwealth, 47 Va. App. 194, 201 n.2, 622 S.E.2d 784, 785 n.2 (2005) (citation omitted).

[10] The Commonwealth admitted the knife into evidence as an exhibit. Cf. Gilliam v. Commonwealth, 49 Va. App. 508, 515, 642 S.E.2d 774, 778 (2007) (including photograph of the knife there in question).

See _ante_ at 7; post at 18 n.12. <u>Farrakhan</u> held that "_[s]ubsequent_ use or circumstances may not be considered in the definitional analysis of 'weapon.'" <u>Farrakhan v. Commonwealth</u>, 273 Va. 177, 182, 639 S.E.2d 227, 230 (2007) (emphasis added); <u>see</u> <u>also</u> <u>Thompson</u>, 277 Va. at 291, 673 S.E.2d at 474. That holding, however, begs the question: Subsequent to what? <u>Farrakhan</u> answers in the sentence immediately preceding: "Because an offense under Code § 18.2-308(A) is 'possessory' in nature, it is committed upon concealment." <u>Farrakhan</u>, 273 Va. at 182, 639 S.E.2d at 230.

Thus, as <u>Farrakhan</u> makes clear, the subsequent use that cannot be considered is the defendant's use of the knife _after_ he conceals it — that is, after he commits the crime. In contrast, his intended use _when_ he conceals it — that is, when he commits the crime — while obviously not dispositive is still relevant. To be sure, if a defendant understands a specific type of knife to be an effective fighting weapon (particularly if he conceals it solely for this purpose), that fact may corroborate the inference that the knife is "commonly understood" to be a weapon. <u>See</u> <u>Thompson</u>, 277 Va. at 288, 673 S.E.2d at 472 (holding that a knife can be a weapon either by design or common use); <u>cf.</u> _ante_ at 7 n.4 (acknowledging that the defendant's "intended use for the knife" could be relevant "to a determination of the knife's common use").

For these reasons, I respectfully dissent.

- 16 -

Humphreys, J., dissenting.

It would be difficult to point to a statute in the Code of Virginia that contains language more confusing, vague, and difficult to parse than Code § 18.2-308(A). For many years, both this Court and our Supreme Court have strived mightily to construe it in a way that recognizes its presumptive constitutionality and, at the same time, to apply its sometimes archaic and rather vague itemization of prohibited weapons to more modern implements that have equivalent utility for doing violence to others. Here, we are once again called upon to answer the increasingly metaphysical question of when is a knife a "weapon."[11] On the record before us and for the reasons that follow, I must respectfully disagree with the majority's holding that McMillan's knife is not a weapon within the meaning of Code § 18.2-308.2. Therefore, I dissent from the judgment.

Code § 18.2-308.2 provides that it is a felony for a previously convicted felon "to knowingly and intentionally carry about his person, hidden from common observation, any weapon described in subsection A of § 18.2-308." Code § 18.2-308(A) enumerates several weapons, including, "any dirk, bowie knife, switchblade knife, ballistic knife, machete, razor" or "any weapon of like kind as those enumerated in this subsection." As explained by the Supreme

---

[11] Although framed in legalese, essentially, like the character portrayed by Paul Hogan in the film "Crocodile Dundee," we find ourselves repeatedly posing the question in these cases, "You call that a knife?" and occasionally agreeing; "Now THAT'S a knife?" While I am in agreement with Judge Petty that in responding to that question, we should not undertake a "we know it when we see it" type of analysis, I do not agree that we have reached this point yet. No issue of constitutional dimension with respect to this statute has previously been before us and none is before us now, and so, while I am sympathetic to the position expressed by Judge Petty in his concurrence, I am loathe to decide this case on issues neither presented nor briefed. This Court and our Supreme Court have struggled mightily, if perhaps with mixed success, to provide clear and consistent guidance to trial courts, police officers, and the citizens of the Commonwealth regarding the legality of carrying concealed, the contemporary cousins of bowie knives, daggers or dirks - items commonly carried by many in centuries past. Whether we can continue to be successful in this endeavor is obviously a matter of some debate among the members of this Court, but as long as the statute exists, we have a duty to continue to try.

Court in Farrakhan v. Commonwealth, 273 Va. 177, 182, 639 S.E.2d 227, 230 (2007), the courts must undertake a multi-step analysis to determine whether an item falls within the scope of Code § 18.2-308(A). See also Thompson v. Commonwealth, 277 Va. 280, 287, 673 S.E.2d 469, 472 (2009).

First, the Court explained, "[i]f the bladed item in question meets the definition of an enumerated item within Code § 18.2-308(A), the evidence is clearly sufficient for a conviction under the statute." Farrakhan, 273 Va. at 182, 639 S.E.2d at 230. If it does not meet the definition of one of the enumerated items, it must then be established as a "weapon." Id. If it is determined to be a "weapon," it then must be a weapon "of like kind" to one of the enumerated weapons to be proscribed by Code § 18.2-308(A). Id. "Generally, a weapon is 'an instrument of offensive or defensive combat: something to fight with.'" Gilliam v. Commonwealth, 49 Va. App. 508, 514, 642 S.E.2d 774, 777 (2007) (quoting Delcid v. Commonwealth, 32 Va. App 14, 18, 526 S.E.2d 273, 275 (2000)); see also Thompson, 277 Va. at 288, 673 S.E.2d 472 (noting that this is the definition used by the Court of Appeals). An item is a "weapon" if "the evidence demonstrates that it is 'designed for fighting purposes' or 'commonly understood to be a 'weapon.'" Thompson, 277 Va. at 288, 673 S.E.2d at 472 (quoting Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). It is a weapon "of like kind" if it "'possesses such similar characteristics to the enumerated items in Code § 18.2-308(A) such that its concealment is prohibited.'" Id. at 289, 673 S.E.2d at 473 (quoting Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). Given the holding of our Supreme Court in Thompson, I now agree with the majority that the knife in question here does not meet the definition of an enumerated item.[12] However, I disagree with

---

[12] I agree with the majority that Judge Kelsey's dissent relies upon an incorrect interpretation of the language in Farrakhan and ignores the remainder of the paragraph he cites in support of his analysis, thereby "eviscerat[ing] the analytic framework laid out in Farrakhan and applied in Thompson." See supra at 7 n.4. I further agree with the majority that "[a] logical reading of these cases and the analytic framework set forth therein indicates that it is the

- 18 -

the majority that the knife in this case is not a weapon at all and, because it exhibits many of the characteristics of both a bowie knife and a dirk, I would hold that it meets the definition of a "weapon" and is a weapon "of like kind" to either or both.[13]

In determining whether an item is "designed for fighting purposes" or "commonly understood to be a weapon" the court looks to the physical characteristics and method of operation of the item. Thompson, 277 Va. at 289, 673 S.E.2d at 472 ("[T]he evidence at trial concerning the knife's physical characteristics and method of operation established that it is 'designed for fighting purposes' or is 'commonly understood to be a 'weapon.'" (citation omitted)). In Thompson, the Supreme Court concluded that the evidence was sufficient to prove that it was a weapon based not only on the officer's testimony that it was an item carried by gang members in the past and dangerous to police officers, but also based on the officer's testimony of the knife's physical characteristics and design. Id. at 288, 673 S.E.2d at 472. In Gilliam this Court determined that the knife in question was a weapon based on its physical characteristics and on the fact that "the knife is clearly not an 'innocuous household [knife or an] industrial kni[fe] which may be carried for legitimate purposes.'" 49 Va. App. at 514-15, 642 S.E.2d at

---

common use, not intended use by an individual, that is relevant to whether an item is a weapon of like kind under Code § 18.2-308.2(A)." See id.

[13] A dirk is defined as "a long straight-bladed dagger formerly carried [especially] by the Scottish Highlanders [and also as] a short sword formerly worn by British junior naval officers." Webster's Third New International Dictionary 642 (1981). A "bowie knife" is defined as "'a large hunting knife adapted [especially] for knife-fighting and common in western frontier regions and having a guarded handle and a strong single-edge blade typically 10 to 15 inches long with its back straight for most of its length and then curving concavely and sometimes in a sharpened edge to the point.'" Wood v. Henry County Public Schools, 255 Va. 85, 95 n.6, 495 S.E.2d 255, 261 n.6 (1998) (quoting Webster's Third New International Dictionary 262).

777-78 (2007) (quoting <u>Richards v. Commonwealth</u>, 18 Va. App. 242, 246 n.2, 443 S.E.2d 177, 179 n.2 (1994)).[14]



As shown in the photograph above, the knife here consists of a fixed blade with one sharp edge and one serrated edge culminating in a point suitable for stabbing. The knife is eight and one half (8 1/2) inches long with the blade measuring about four (4) inches. At trial, the officer described the knife as "rigid [[sic], in context it is obvious that what he actually said was "ridged"] on one side, smooth on the other, comes to a point," and further described it as "some sort of diver's knife." While the officer described it as a diver's knife and did not mention the knife's method of operation, purpose for which it is designed, or uses which it is commonly understood to be put to, we have the physical description on the record and the actual knife before us as an exhibit. In addition we have the trial court's factual finding that it is "two-edged" and has "a point to it." Based on these facts, this knife is not just an "innocuous household knife" nor is it an "industrial knife" carried for a legitimate purpose.[15] Thus, in my view and contrary to the holding of the

---

[14] The Court in <u>Gilliam</u> further based its determination that the knife was a weapon on the circumstances under which the individual possessed the item because at that time the Court held that the "'circumstances surrounding its possession and uses'" were relevant to "'defining [the] characteristics of the item in question.'" <u>Gilliam</u>, 49 Va. App. at 514, 642 S.E.2d at 777 (quoting <u>Delcid</u>, 32 Va. App. at 19, 526 S.E.2d at 275). However, as noted by the majority, <u>Thompson</u> held that "'[s]ubsequent use or circumstances may not be considered in the definitional analysis of "weapon."'" 277 Va. at 291, 673 S.E.2d at 474 (quoting <u>Farrakhan</u>, 273 Va. at 182, 639 S.E.2d at 230).

[15] I recognize that in <u>Farrakhan</u>, and subsequently in <u>Thompson</u>, our Supreme Court made it clear that the use of the item or circumstances of possession may not be considered in the analysis of whether or not a particular item is a "'weapon'" impacted by Code § 18.2-308(A). <u>Thompson</u>, 277 Va. at 291, 673 S.E.2d at 474 (quoting <u>Farrakhan</u>, 273 Va. at 182, 639 S.E.2d at 230). Thus, in yet another example of what often makes any attempt to construe this statute

majority, the evidence at trial established that the knife in issue is a bladed instrument that can be used for offensive or defensive combat and is therefore "commonly understood to be a 'weapon.'"

Because I would hold that the knife in this case is a weapon, I now turn to whether the knife "'possesses such similar characteristics to the enumerated items in the Code § 18.2-308(A) such that its concealment is prohibited.'" Thompson, 277 Va. at 289, 673 S.E.2d at 473 (quoting Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). To be a weapon "of like kind," the item has to be "substantially similar" to an enumerated weapon. Id. at 290, 673 S.E.2d at 473. In addition to the dictionary definition recited in Wood, *supra* note 13, other characteristics of a bowie knife are that it is "'a stabbing weapon having a single sharp edge, a dull or serrated flat edge and a point, such as a hunting knife, a fishing knife or a survivalist's knife.'" Gilliam, 49 Va. App. at 514 n.5, 642 S.E.2d at 777 n.5 (quoting Richards, 18 Va. App. at 246 n.2, 443 S.E.2d at 179 n.2). Both definitions are consistent with each other and I therefore take them together in determining whether the weapon in this case is "of like kind" to a bowie knife.[16] Moreover, as noted in Wood and reiterated in Thompson, a dirk is "a long straight-bladed dagger or a short sword." Thompson, 277 Va. at 282, 673 S.E.2d at 473.

---

particularly difficult, the characterization in the record by Trooper Powell that this particular item was a "diver's knife" along with the item itself, would seem to provide the entire framework for our analysis and the fact that McMillan told Trooper Powell at the scene that he had riveted the knife to the door of his vehicle where no denizen of the deep was likely to be found and that he did so "for protection" since he was "a country boy living in the city" is of no moment.

[16] In Goodwin v. Commonwealth, No. 2006-04-1 (Va. Ct. App. July 12, 2005), this Court noted that both definitions of the bowie knife had been used to define a bowie knife and that they were consistent with each other. While Goodwin is unpublished, this Court can consider the rationale used and adopt it here since it is persuasive. Fairfax County Sch. Bd. v. Rose, 29 Va. App. 32, 39 n.3, 509 S.E.2d 525, 530 n.3 (1999) ("Although an unpublished opinion of the Court has no precedential value, see Grajales v. Commonwealth, 4 Va. App. 1, 2 n.1, 353 S.E.2d 789, 790 n.1 (1987), a court . . . does not err by considering the rationale and adopting it to the extent it is persuasive.").

The knife in question in this case, while not precisely congruent to either, has many significant similarities to both a bowie knife and a dirk. Here, even though the knife is not ten to fifteen (10-15) inches long, nor does it have a slight dip at the top of the blade, it has other substantially similar characteristics to both types of weapon. The knife here is eight and one half (8 1/2) inches long and is clearly designed for either cutting or stabbing. Its blade has one sharp edge, a serrated flat edge, and comes to a sharp point. As a "diver's knife," it is certainly akin to a hunting, fishing or survivalist's knife. It also has a fixed blade suitable for stabbing like a dagger, and it is typically carried in a sheath and thus shares the essential characteristics of a dirk. In my view, even though the officer describes the knife as being a "diver's knife," this fact does not take away the knife's obvious physical characteristics that are substantially similar to those of both a bowie knife and a dirk. Applying these two definitions separately to the knife in question, I would hold that it is substantially similar and thus "of like kind" to both a bowie knife and a dirk and therefore proscribed by the statute.

Because I would hold that McMillan's knife is a "weapon of like kind," I would also address McMillan's contention that the knife was not concealed. That argument, however, is one that he makes for the first time on appeal. In his brief, McMillan acknowledged that he failed to present that argument to the trial court, and asks us to invoke the "ends of justice" exception of Rule 5A:18 and address the merits of his claim.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "The ends of justice exception to Rule 5A:18 is narrow and is to be used sparingly." Copeland v. Commonwealth, 42 Va. App. 424, 442, 592 S.E.2d 391, 399 (2004). In order for the exception to apply, "[t]he record 'must affirmatively show that a miscarriage of justice has

occurred, not that a miscarriage might have occurred.'" Akers v. Commonwealth, 31 Va. App. 521, 528 n.2, 525 S.E.2d 13, 16 n.2 (2000) (quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)).

"In order to show that a miscarriage of justice has occurred, an appellant must demonstrate more than that the Commonwealth failed to prove an element of the offense." Redman, 25 Va. App. at 221, 487 S.E.2d at 272-73. The "appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." Id. at 222, 487 S.E.2d at 273. "Therefore, 'in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense.'" Wheeler v. Commonwealth, 44 Va. App. 689, 692, 607 S.E.2d 133, 135 (2005) (quoting Lewis v. Commonwealth, 43 Va. App. 126, 134, 596 S.E.2d 542, 546 (2004)).

McMillan does not claim that carrying a concealed weapon is not a criminal offense. Thus, for the ends of justice exception to be applicable here, the record must contain evidence affirmatively proving that McMillan's knife was not "hidden from common observation." Code § 18.2-308.2. Trooper Powell's testimony is the only information in the record regarding the location of McMillan's knife. Trooper Powell testified that he found the knife in a sheath that was "riveted" to the inside of the driver's side door of McMillan's truck. When asked where the sheath was riveted to the door, Powell answered, "Midway, accessible to his left hand." Regardless of whether that testimony is sufficient to prove that the knife was hidden from common observation, it does not affirmatively prove that it was not. Thus, the ends of justice exception is not applicable.

For these reasons, I would affirm McMillan's conviction for carrying a concealed weapon.

Beales, J., dissenting.

I find that I must respectfully disagree with the majority opinion, as I believe the trial court had sufficient evidence before it to find that the knife riveted to appellant's car door was "a weapon of like kind" under Code § 18.2-308(A). In reaching this conclusion, I tend to agree with Judge Humphreys's analysis in his dissent to the extent that the knife here is "a weapon of like kind" to a bowie knife. In addition, I agree with the portion of Judge Kelsey's dissent that distinguishes Farrakhan v. Commonwealth, 273 Va. 177, 639 S.E.2d 227 (2007), from the circumstances presented by this case, particularly as Farrakhan only indicated an intent to use the kitchen knife as a weapon *after* he removed it from its place of concealment, id. at 180, 639 S.E.2d at 229, whereas here, in contrast, McMillan admitted that he intended to use his rather menacing knife as a weapon for his protection *when he concealed it* in his vehicle. While I agree with the majority opinion that this admission alone is certainly not dispositive of whether the knife is actually a weapon, appellant's admission is a probative factor to consider when determining if the evidence is sufficient to prove that the knife is a weapon. Therefore, when appellant's admission is considered together with the other evidence in this case, I would find that the evidence is sufficient to prove the knife is a weapon.